[Crim. No. 1330. Second Appellate District, Division Two.—May 14, 1926.]

## THE PEOPLE, Respondent, v. JOSEPH FITZPATRICK et al., Defendants; CHARLES E. DOWNS, Appellant.

[1] EVIDENCE—CONVERSATIONS—IDENTITY OF PARTICIPANTS.—While testimony may not be given of a conversation alleged to have been participated in by a particular person unless the person first be identified as one of the parties to the conversation, every witness to a conversation is not required to himself identify the participants in it.

[2] CRIMINAL LAW—BRIBERY—CONVERSATIONS—FOUNDATION EVIDENCE. In this prosecution for bribery, one of the witnesses for the prosecution having testified that a certain conversation was between himself and defendant and that while the conversation progressed a second witness was concealed in a closet opening from the room in which the conversation was had, and said second witness having testified that at the time fixed by the other witness he was in the closet and heard the conversation between said other witness and some other man, said second witness was properly permitted to detail the substance of the conversation, even though he did not see and could not identify defendant.

[3] ID.—ADMISSIBLE TESTIMONY—MOTION TO STRIKE.—In such prosecution, said second witness having properly been permitted to relate the conversation he heard from his hiding place, the court did not err in denying defendant's motion to strike out his entire testimony.

[4] ID.—ACCOMPLICE—EVIDENCE—INSTRUCTIONS.—In such prosecution, from the undisputed evidence in the record it having been impossible for the jury to find that a certain witness for the prosecution was an actual accomplice of defendants, and the court having given the jury several instructions which were appropriate to the question whether said witness was an actual accomplice with defendants, or merely a feigned accomplice, any error of the trial court in refusing to give certain instructions requested by defendants upon the same subject could not have resulted in a miscarriage of justice and, therefore, under section 4½ of article VI of the constitution, did not require a reversal of the judgment.

[5] ID.—ACCEPTANCE OF BRIBE—INTENT—IGNORANCE OR MISTAKE OF FACT—INSTRUCTIONS.—In this prosecution, defendant having been charged with the crime of receiving or agreeing to receive a bribe for the purpose of influencing his official action as a member of the city council, if the jury believed from the evidence that the

2. See 1 R. C. L. 560.

money paid to defendant was not taken by him for such purpose, but was taken solely as a contribution to his campaign expense, the charge was not proven; and there was no evidence calling for an application of the provision of section 26 of the Penal Code relating to the commission of an act through "an ignorance or mistake of fact, which disproves any criminal intent," and defendant's requested instruction based upon that element was properly refused.

[6] Id.—Multiplicity of Instructions—Entrapment.—It is the duty of the trial judge not to burden the jury with a useless multiplication of instructions upon a given subject; and in this prosecution for bribery, the court having given an instruction upon the defense of entrapment, it was not error to refuse defendant's requested instructions which but amplified or expanded the rules of law contained in the instruction given.

[7] Id.—Bribery—Agreement—Evidence—Instructions.—In a prosecution for bribery, a requested instruction that, "Unless you should find from the evidence beyond a reasonable doubt that the witness . . . acted with a criminal and corrupt intent and that the defendants did likewise, then it will be your duty to find the defendants not guilty, for the reason that to complete the offense charged against the defendants, both the parties agreeing to pay and paying over the alleged bribe and the parties receiving and agreeing to receive the same, must act with corrupt intent, otherwise there does not exist such agreement or understanding which the law has established as an essential ingredient of the crime alleged in the indictment in the case before you," does not state the law, as the terms of section 165 of the Penal Code are met if it is proven to the satisfaction of a jury that the defendants have "agreed" or intended in their own minds to receive a bribe.

---

(1) 16 **C. J.**, p. 628, n. 90.    (2) 16 **C. J.**, p. 548, n. 53 New.    (3) 16 **C. J.**, p. 882, n. 9.    (4) 16 **C. J.**, p. 677, n. 61; 17 **C. J.**, p. 368, n. 5.    (5) 16 **C. J.**, p. 86, n. 20.    (6) 9 **C. J.**, p. 415, n. 79; 16 **C. J.**, p. 91, n. 63, p. 971, n. 61, p. 1063, n. 85.    (7) 9 **C. J.**, p. 404, n. 35.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Edwin F. Hahn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jerry Giesler and Leon R. Yankwich for Appellant.

---

6. See 8 Cal. Jur. 320.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

WORKS, J.—Defendants were charged jointly with the crime of bribery, in that defendants Fitzpatrick and Downs received and agreed to receive from one William C. Hodges a bribe for the purpose of influencing their action as members of the city council of the city of Los Angeles in a certain matter pending before that body and in that defendant Murphy aided and abetted his codefendants in the commission of the offense. Murphy was acquitted and Fitzpatrick and Downs were convicted. The two latter defendants appealed from the judgment of conviction and from an order of the trial court denying their motion for a new trial, but the appeal of Fitzpatrick was later dismissed.

It was the theory of the prosecution that Murphy was a go-between whose office in the commission of the crime was in bringing Hodges into direct communication with Fitzpatrick and Downs. Hodges testified to a conversation that he had with Murphy in a downtown office building, the evidence thus given being damaging not alone to Murphy but to his codefendants as well. Hodges also testified that one J. Howard Murphy was concealed in a closet opening from the room in which he had the conversation with defendant Murphy during the time when the conversation occurred. J. Howard Murphy will hereafter be referred to as the witness Murphy in order to distinguish him from the defendant Murphy. The witness Murphy, when put upon the witness-stand, corroborated Hodges as to the substance of the conversation between the latter and defendant Murphy. On his direct examination, also, the witness Murphy made it appear that from his hiding place he had seen both Hodges and defendant Murphy as the conversation proceeded between them. On cross-examination, however, it was clearly established that the witness Murphy saw only Hodges, as he was so placed in the closet as to be unable to see the other party to the conversation. Moreover, it was shown that the witness Murphy did not know defendant Murphy's voice and that he possessed no other means of identifying the person from whom the voice proceeded. He could hear the man who, according to the testimony of Hodges, was defendant Murphy, but did not himself know that it was defend-

ant Murphy who spoke. When this situation was developed upon the cross-examination defendants moved that the entire testimony of the witness Murphy be stricken and the motion was denied. It is now contended that the ruling was error.

[1] In making this contention appellant cites abundant authority in support of the well-established rule that testimony may not be given of a conversation alleged to have been participated in by a particular person unless the person first be identified as one of the parties to the conversation. There is no rule of evidence, however, which requires that every witness to a conversation shall himself identify the participants in it. [2] Here Hodges swears that the conversation was between himself and defendant Murphy. Here Hodges also swears that the witness Murphy was concealed in the closet while the conversation progressed. Here the witness Murphy swears that at the time fixed by Hodges he was in the closet and heard a conversation between Hodges and some man to him unknown. These items of evidence would seem to lay a sufficient foundation upon which to permit the witness Murphy to detail the substance of the conversation. In a case decided in Illinois one Mrs. Obert was permitted, as against a party for whom one Slyder was an agent, to testify to a conversation she had over the telephone with a man who said he was Slyder. She had no means of identifying the man as Slyder, as she had never heard his voice, but there was testimony from other witnesses which tended to show that it was probably Slyder with whom she talked. It was contended on appeal that the trial court erred in admitting Mrs. Obert's testimony. The appellate court said in disposing of the point: "There being evidence Slyder desired to communicate with Heeren by telephone through Mrs. Obert it was a question of fact for the jury from all the evidence before them whether he was the party or not" (*Rogers Grain Co.* v. *Tanton,* 136 Ill. App. 533). There is other authority which supports the rule thus stated (*Wolfe* v. *Missouri Pac. Ry. Co.,* 97 Mo. 473 [10 Am. St. Rep. 331, 3 L. R. A. 539, 11 S. W. 49]; *Godair* v. *Ham Nat. Bank,* 225 Ill. 572 [116 Am. St. Rep. 172, 80 N. E. 407]; *Conkling* v. *Standard Oil Co.,* 138 Iowa, 596 [116 N. W 822]), and we think the rule is directly applicable here. [3] It was not error to allow the witness Murphy to relate the conversation that he heard from his

hiding place, and as the motion to strike was directed at his entire testimony it was properly denied. Nor do we decide whether the testimony of the witness on direct examination, to the effect that he identified defendant Murphy as one of the parties to the conversation, could have been stricken upon a more specific motion merely because the complexion of the testimony was changed on cross-examination.

[4] As Hodges would have been chargeable with the same offense as that with which defendants were charged, if he were their accomplice in the commission of the acts out of which the charge against them arose, a question that naturally presented itself at the trial was whether Hodges was an actual accomplice with defendants, or merely a feigned accomplice. The trial court gave to the jury several instructions which were appropriate to such a question, but refused to give certain instructions requested by defendants upon the same subject. It is contended that in this refusal there was error. If we concede, without deciding, that the court erred in refusing the requested instructions, we must at once observe that the error was utterly harmless. The testimony at the trial showed without dispute that after Hodges had his conversation with defendant Murphy he also had a meeting with Fitzpatrick and Downs; that at that meeting arrangements were made for the payment to them by Hodges of money; that after the meeting Hodges disclosed the plot, as far as it had then progressed, to two men who were members of the city council along with Fitzpatrick and Downs; that thereupon these councilmen went with Hodges to the district attorney of Los Angeles County, when Hodges divulged the story of the plot to that official; that a parcel of paper money was then made up to be given Fitzpatrick and Downs, the district attorney taking note of the number of each of the bills which was placed in the parcel; that three detectives who were associated with the district attorney's office were made acquainted with the plot, were given the numbers of the bills and were instructed to be, at a certain time, immediately outside a certain room in which Hodges had agreed to meet Fitzpatrick and Downs; that it was arranged that after Hodges met the two men he should emerge from the room with his hat in his hand as a signal to the detectives that he had passed the money to

them; that the detectives went to the appointed place at the time set; that while they were waiting outside the room Hodges came from it with his hat in his hand; and that the detectives thereupon rushed into the room, found Fitzpatrick and Downs there, and found one-half of the marked bills in the possession of each of them. With this undisputed evidence in the record it was impossible for the jury to find that Hodges was an actual accomplice of defendants. Conversely, the jury could not have avoided a finding that he was a feigned accomplice. If, then, it was error for the trial court not to give the requested instructions, the error cannot require a reversal under the provisions of section 4½ of article VI of the constitution, to the effect that no error shall work a reversal of a judgment unless it has resulted in a miscarriage of justice. It is therefore unnecessary to decide whether the refusal to give the requested instructions was erroneous.

[5] Section 26 of the Penal Code reads, in part: "All persons are capable of committing crimes except those belonging to the following classes: . . . Four. Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent." There is some evidence in the record here that Fitzpatrick and Downs intended to take the money which Hodges delivered to them as a contribution to their expenses incurred during an election campaign through which they had recently gone and which resulted in their election as members of the city council, and that they believed that they had the right to take the money as such contribution. In view of this evidence they requested the trial court to give to the jury the following instruction: "If the jury should believe from the evidence or should entertain a reasonable doubt therefrom that the defendants received or agreed to receive the $2,000 alleged in the indictment under an ignorance or mistake of fact as to the purpose for which said sum was received or agreed to be received, and if you should further believe from the evidence or entertain a reasonable doubt therefrom that such ignorance or mistake of fact disproves any criminal intent upon the part of the defendants to receive or agree to receive said amount as a bribe as charged in the indictment, then it will be your duty to find the defendants not guilty." The requested

instruction was refused and it is now contended that the refusal was error. We think it was not. The evidence upon which the instruction was based did not furnish room for the application of subdivision "Four" of section 26 of the Penal Code. Appellant was charged with receiving or agreeing to receive a bribe for the purpose of influencing his official action as a member of the city council. If the jury believed from the evidence that the money which Hodges paid to appellant was not taken by him for such a purpose, but was taken solely as a contribution to his campaign expenses, the charge was not proven. In other words, appellant took the money with the intent that it should influence his official action or he did not. There was ample evidence that he took it with that intent. There was some testimony that he took it as a contribution to his election expenses. As between these conflicting items of evidence the question was, simply, Which was the jury to believe? We can perceive no element of "ignorance or mistake of fact," within the contemplation of section 26 arising from either of these branches of the evidence, or from both of them when considered together. They presented to the jury merely a conflict upon which was to be answered the question, Is appellant guilty or is he innocent?

Appellant requested the trial court to give to the jury two certain instructions upon the law of entrapment and both were refused. The first of the two read: "The defense of entrapment is based upon public policy. In considering such defense a clear distinction founded upon principle is to be observed between measures used to entrap a person into crime in order, by making him a criminal, to aid the instigator in the accomplishment of some corrupt private purpose of his own and artifice used to detect persons suspected of being engaged in criminal practices. If the jury should believe from the evidence or entertain a reasonable doubt therefrom, that the entrapment was brought about by instigation to aid the instigator in the accomplishments of some corrupt private purpose of his own, rather than for the purpose of apprehending and prosecuting persons reasonably suspected of crime, then it would be the duty of the jury to find the defendants not guilty of any such offense."

The second refused instruction upon the same general subject was as follows: "In cases where entrapment into crime is a defense, to warrant a conviction one of two conditions must be present: Either, first, there must have been reasonable suspicion and grounds therefor on the part of the authorities and those working with them that the defendants in the case were engaged in the commission of a crime or about to so engage; or, second, the original suggestion or initiative to commit the offense must have come from the defendants themselves. If, after a careful consideration of the case, the jury entertain a reasonable doubt as to whether or not either under the first plan there was not sufficient reasonable grounds upon which to base a suspicion that the defendants were committing or about to commit crime, or under the second plan, that the original suggestion or initiative did not come from the defendants but was implanted in their minds at the instigation and inducement of the authorities or those acting with them, then it will be their duty in either event to give the defendants the benefit of such reasonable doubt and find such defense of entrapment to exist, and find the defendants not guilty."

[6] It is contended that the refusal to give these requested instructions was error. We think the refusal was correct in each instance for the reason that the court covered the subject involved in the two proposed instructions by one that was given. It read: "If the witness Hodges and the authorities had reasonable grounds to suspect the defendants Downs and Fitzpatrick of committing or attempting to commit the crime of receiving or agreeing to receive a bribe, and the action of the authorities and that of the witness Hodges as testified to in this case, was taken in an effort to detect crime and not to induce its commission, then such action on their part was lawful, and if you should find from the evidence and beyond a reasonable doubt that the defendants Downs and Fitzpatrick did commit the crime as charged in the indictment, they would be guilty. On the other hand, if you should find from the evidence or entertain a reasonable doubt therefrom, that the action of the authorities and the witness Hodges, or either of them, was taken in bad faith and for the purpose of inducing and enticing the defendants Downs and Fitzpatrick to commit the offense charged, and that they or either of them in fact

induced the original intent on the part of the defendants
to do the acts charged as a crime, then it will be your duty
to find the defendants not guilty.'' The rules of law stated
in the refused instructions are but amplifications or expan-
sions of those as to which the jury was informed in the in-
struction which was read to its members. We think that
by the latter the jury was sufficiently charged concerning
the defense of entrapment. It is the duty of a trial judge
not to burden the jury with a useless multiplication of in-
structions upon a given subject. A restatement of a rule
of law in different forms, instead of inducing clarity, often
leads to confusion in the minds of the jurors. We think
that danger was properly avoided in the present instance.

[7] Appellant insists that the trial court erred in its
refusal to give the following requested instruction: ''Unless
you should find from the evidence beyond a reasonable doubt
that the witness Hodges acted with a criminal and corrupt
intent and that the defendants did likewise, then it will be
your duty to find the defendants not guilty, for the reason
that to complete the offense charged against the defend-
ants, both the parties agreeing to pay and paying over the
alleged bribe and the parties receiving and agreeing to re-
ceive the same, must act with corrupt intent, otherwise
there does not exist such agreement or understanding which
the law has established as an essential ingredient of the
crime alleged in the indictment in the case before you.''
This proposed instruction does not state the law. The
agreement referred to in it and in section 165 of the Penal
Code, under which appellants were charged, is not the kind
of agreement contemplated by the civil law of contracts,
under which there must be an actual meeting of the minds
of contracting parties in order to form an agreement. So
to hold would be to allow the escape from punishment of
grossly corrupt public officials in those cases in which
others might feign to be their accomplices and in which no
evidence against the defendants exists except that to come
from those feigned accomplices. The terms of the statute
are met if it is proven to the satisfaction of a jury that the
defendants have ''agreed'' or intended in their own minds
to receive a bribe. There is nothing inconsistent with this
view in *People* v. *Bunkers,* 2 Cal. App. 197 [84 Pac. 364,
370], *People* v. *Emmons,* 7 Cal. App. 692 [95 Pac. 1032],

and *People* v. *Coffey*, 161 Cal. 433 [39 L. R. A. (N. S.) 704, 119 Pac. 901], all of which are cited by appellants. In truth, the conviction which resulted in *People* v. *Emmons* was procured partially through the testimony of feigned accomplices.

Judgment and order affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 8, 1926.