## ROBINSON v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
December 26, 1928.

On Rehearing, April 15, 1929. Further Rehearing Denied April 26, 1929.

No. 7999.

John B. Gage, of Kansas City, Mo. (J. N. Tincher and Don Shaffer, both of Hutchinson, Kan., on the brief), for plaintiff in error.

William L. Vandeventer, Asst. U. S. Atty., of Springfield, Mo. (Roscoe C. Patterson, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before KENYON, Circuit Judge, and SYMES and MARTINEAU, District Judges.

MARTINEAU, District Judge. James Robinson, the defendant, in the early part of January, 1926, was a federal prohibition agent, working in Kansas City. He had been a prohibition agent from April, 1922, and had worked out of Hutchinson, Kan., until he was transferred to Kansas City, in January, 1926. In June, 1926, he resigned from the government service to run for sheriff of his county.

On January 14, 1926, while engaged in the prohibition work in Kansas City, he says that he purchased a quart of gin from one Dan Marsh, who was proprietor of the Rockhill drug store. He says that a man, who was drinking, whose name he does not know, sat down by him in the Sexton Hotel. He asked this unknown party where he could get some liquor, and the two went together to Marsh's drug store, and there bought from Marsh a quart of gin, which was later turned over to the deputy prohibition administrator for that district, and introduced in evidence in this case.

On January 16th, a search warrant was issued on the sworn affidavit of Robinson, who later, in company with five other prohibition agents, searched Marsh's drug store, and two five-gallon containers of alcohol were found. Marsh then and in the trial of this case admitted that one of these five gallons of alcohol was bootleg, illegally obtained. Marsh was then arrested on an information charging him with the illegal possession and sale of whisky and with maintaining a nuisance. He first employed Chris Rucker as his attorney. His case was set for trial in May, 1926. About this time, or just prior thereto, Marsh discharged Rucker and employed Senator James Summers. This change of attorneys was brought about through a Mr. Buchanan, who was a political friend of Summers. Marsh's case was continued on account of the condition of his wife's health, with an agreement that he would later enter a plea of guilty. His case was again set for trial on September 9, 1927, when another motion for continuance was granted without objection from the district attorney, on the ground that Marsh's attorney had presented to the district attorney evidence tending to show that the charge of selling whisky was not bona fide, and that a further investigation of the case ought to be made by the district attorney before the case was tried.

James Robinson was subpœnaed and was in the courtroom as a witness in the Marsh and other cases. Later on the same day he went into the district attorney's office and there had a conversation with both the district attorney, Mr. Patterson, and his assistant, Mr. Brewster. During this conversation they explained to him that the reason for the continuance of the Marsh case was that Marsh, while admitting that he had in his possession on the day when his store was searched five gallons of bootleg alcohol, denied that he had previously made a sale of the bottle of gin to Robinson, and claimed that the selling case against him was a frame-up. After their talk with Robinson, Brewster called up Senator Summers, the attorney for Marsh, and explained to him that a motion would be made to set aside the order of continuance and have the case against Marsh set for trial.

Robinson testified that on the morning of September 9th, while waiting to be called as a witness, he was approached by Marsh in the courthouse lobby, and asked if there was not some way to fix his case. He says that on the afternoon of the same day Marsh again saw him and made a proposition to pay him $200 to get out of the way and not testify, and that he then told him that he would later call him. Between the time the proposition was made in the morning and his conversation with Marsh in the afternoon, he had had a talk with the district attorney and his assistant, in which doubt was expressed as to the truth of his testimony about the selling charge against Marsh, and that this had caused him to make up his mind to trap Marsh by accepting his money and promising not to appear against him as a witness. In furtherance of that scheme he called Marsh over the telephone.

Marsh on the morning of the 10th reported to his attorney Summers that Robinson had called him over the telephone, and Summers advised Marsh to meet him and see what he wanted. He then saw Robinson, so he

says, and Robinson made a proposition to absent himself as a witness in the trial of the case, if he would pay him a certain sum of money, which was not then fixed. He then reported this to Senator Summers, who in turn communicated with Mr. Brewster, the assistant district attorney. It was then decided by them that Marsh would be advised to carry out, under the direction of the Department of Justice agents, the proposition which he says was submitted to him by Robinson, and in that way entrap Robinson by having him accept $250 to fail to appear as a witness against Marsh in the liquor case.

Marsh and Robinson did meet several times between then and September 11th, when, under an agreement between them, $250 was delivered by Marsh to Robinson at a designated place. Marsh was acting under the direction of the agents of the Department of Justice, and when the money was delivered by him to Robinson on one of the public streets of Kansas City, four agents of the Department of Justice immediately arrested Robinson on a signal from Marsh, and found in his pocket $250 in marked currency, which Marsh had given him. Robinson was at once taken to the office of the agent of the Department of Justice, where without advice from any one he made a written statement, admitting that he had received the $250 from Marsh, but that his only motive in accepting the money was that he might entrap Marsh into giving him the bribe, and in that way prove to the district attorney's office that the selling charge which he had made against Marsh was not a frame-up.

Robinson was indicted for receiving a bribe of $250 to absent himself from the trial of Marsh, in which he was a witness for the government, was convicted, and sentenced to serve 18 months in the penitentiary.

It will thus be seen that the only material issue of fact in dispute to be determined by the jury was the motive which prompted Robinson to accept the $250. Robinson and Marsh were the only witnesses who testified directly to this issue. Robinson testified that he, at the solicitation of Marsh, was attempting to entrap Marsh into giving him a bribe, while Marsh testified that at the solicitation of Robinson he gave him a bribe to entrap him. This was the crucial issue in the case, and any testimony having any bearing upon this issue, or any improper conduct or argument of the government attorneys on that point, would be material.

The writer is of the opinion that the bribe inhibited by the law (section 134, Criminal Code; 18 USCA § 240) under which this indictment is drawn requires for its commission corrupt conduct upon the part both of the giver of the bribe and of the one who receives it, and that, if either Marsh gave the bribe for the purpose of entrapping Robinson, or Robinson received it for the purpose of entrapping Marsh, Robinson would not be guilty of the crime of bribery. The purpose of the government, through its agents, should be to prevent crime and not to encourage its commission. This is certainly true with reference to crimes like the one with which Robinson is charged.

Human nature is too frail and weak, in many cases, to withstand temptations such as might be offered in the form of money to induce a witness to violate the statute under which this prosecution is brought. This case itself shows the danger, if not the viciousness, which might follow the approval by the courts of a course which would permit government agents, through an indicted person, who admits his guilt, to offer the principal witness against him money to absent himself from the trial. It likewise shows how dangerous it is to indorse a course which would permit the witness himself to solicit from an indicted person money for the sole purpose of ascertaining if a bribe will be given. Both Marsh and Robinson admit the essential facts with reference to the giving and receiving of the bribe, and the sole point at issue is to determine which of the two acted corruptly.

In this case, as in most other cases of a like kind, the parties to the transaction are the only ones who can testify directly to their motives. The real purpose of this statute was to make a witness guilty of bribery, who in fact received money to absent himself from the trial of a case in which he was a witness, from some person who really wanted him to absent himself. It seems unreasonable, if not unconscionable, that the government, through its agents, would be permitted to offer Marsh, an admitted violator of the law, immunity if he could, by offering money, bribe the chief witness against him to commit another violation of the law. Immunity was bound to be his reward if he succeeded. This case must not be confused with cases which hold that the government agent may with propriety, in certain cases, buy whisky from one who has it for sale, for the sole purpose of ferreting out the crime of the seller. In these cases it is assumed that since the sale of the whisky is made to the agent, the seller is engaged in the business of whisky selling. This is the only theory upon which such conduct can be approved and convictions properly upheld. It seems to me that the admitted facts in the instant case are such as to prevent the conviction of Robinson.

Conceding, however, that the theory upon which the lower court tried the case, that Marsh, who had admitted his guilt in a charge against himself, could, with the sanction of the agents of the department of the government, give Robinson, the principal witness against him, at Robinson's solicitation, money to absent himself upon the trial of his case, and thereby make Robinson guilty of the crime of bribery, is correct, the improper conduct and argument of the case by the government attorneys is such as to demand a reversal.

Both the district attorney and his assistant advised and recommended the course pursued by Marsh and his attorney, to induce Robinson to accept money as a bribe. They were, therefore, cognizant of all the facts leading up to the commission of the crime, and on the trial of the case, Brewster, the assistant district attorney, was one of the principal witnesses for the government, and was the only witness who testified to essential facts necessary to the conviction of Robinson. While the district attorney himself did not actually testify in the case, yet his examination of many of the witnesses, as well as his final appeal to the jury, was of such a nature that it really constituted evidence in the case. Brewster, after giving his testimony, did not withdraw from the trial of the case, but made the opening argument for the government, much of which detailed facts about which he had already testified, while the rest of his argument would appear to the jury to be evidence.

A careful reading of this record will convince any one that the trial developed into a controversy as to whether the conduct of the government's attorneys, in the handling of the Marsh case, and in the approval of a course which led to the giving of the $250 to Robinson, ought to be approved. For some reason the district attorney and his assistant had become convinced that Robinson was not telling the truth when he swore that he purchased gin from Marsh. This led them, unconsciously perhaps, to develop their case in such a way as to make the jury believe that the integrity of their own actions depended upon a conviction of Robinson. This was not the issue being tried, and yet it unquestionably influenced the action of the jury.

In addition to this improper conduct upon the part of the government attorneys during the trial of the case, they continued to pursue unfair methods in their argument. In the examination of witnesses defendant had attempted to show that his conduct as a prohibition agent was honest and commendable, but such evidence, over the objection of the government, was not permitted by the court to be introduced. In arguing the case, however, the United States attorney used the following language:

"Gentlemen: Jim Robinson was an agent in the government service for five years. He made many cases, so he says, yet in only one case did he ever get into court. Why? What was wrong with this man's cases that they did not go to trial?"

This argument was entirely outside the testimony. The court had, in its rulings, held that Robinson could not show what had become of the cases which he had made. The purpose of the district attorney in using this language was to leave the impression with the jury that Robinson had been taking bribes to suppress evidence in other cases, which he had investigated.

This was not all. The government attorneys in their argument, in an impassioned and impressive way, appealed to the jury to convict Robinson, because he was a government agent, and urged that a failure to convict him would be an evidence in the eyes of the public and other government officials that juries would not convict men engaged in the government service. At the same time the impression was left that the failure of the jury to convict Robinson would, in a measure, be a condemnation of the conduct of the district attorney and his assistant in handling the Marsh case. The jury was told, in no uncertain terms, that a failure to convict Robinson would impair the efficiency of agents engaged in the government service, and would in that way result in an irreparable injury to the public. The language used was, in many respects, not justified by the evidence, and was highly prejudicial to the defendant.

There are times when no admonition or instructions of the court can remove from the jury's mind the effect of improper conduct and remarks of counsel, and we think this is true in this case. These principles are supported by the authorities. Johnson v. United States (C. C. A.) 215 F. 679, L. R. A. 1915A, 862; Elmer v. United States (C. C. A.) 260 F. 646; August v. United States (C. C. A.) 257 F. 388; Hale v. United States (C. C. A.) 25 F.(2d) 430, 440.

The case will therefore be reversed.

KENYON, Circuit Judge, concurs in the result, but does not agree with all the conclusions of the opinion.

SYMES, District Judge (concurring). I concur in the result, but not in the conclusions of the opinion, except in so far as it

condemns a part of the argument of the assistant district attorney, and his failure to withdraw after acting as a principal witness.

### On Petition for Rehearing.

KENYON, Circuit Judge. This case is before us upon petition for rehearing. Judge SYMES and the writer concurred in the result announced in the opinion in this case, but did not agree, as we there stated, with all the conclusions of the opinion. This has led to some misunderstanding, and might result in confusion in the further progress of the case. Therefore it seems important on rehearing to clarify the situation.

█ It is apparent there was some diversity of opinion in the minds of the judges who sat on the appeal in this case. We were all of the opinion, however, and are now, that the judgment must be reversed on account of certain statements in the argument of the attorneys for the government. In the opinion it is stated: "The writer is of the opinion that the bribe inhibited by the law (section 134, Criminal Code; 18 USCA § 240) under which this indictment is drawn requires for its commission corrupt conduct upon the part both of the giver of the bribe and of the one who receives it, and that, if either Marsh gave the bribe for the purpose of entrapping Robinson, or Robinson received it for the purpose of entrapping Marsh, Robinson would not be guilty of the crime of bribery." We are not in agreement with this.

The statute under which this indictment was found is 18 USCA § 240, which is as follows: "Whoever being, or about to be, a witness upon a trial, hearing, or other proceeding, before any court or any officer authorized by the laws of the United States to hear evidence or take testimony, shall receive, or agree or offer to receive, a bribe, upon any agreement or understanding that his testimony shall be influenced thereby, or that he will absent himself from the trial, hearing, or other proceeding, or because of such testimony, or such absence, shall be fined not more than $2,000, or imprisoned not more than two years, or both."

Under this statute, if the corrupt intent exists on the part of the person receiving the bribe to absent himself from the trial, regardless of the intention on the part of the giver, it is sufficient to constitute the crime charged. Guilt is measured by his own intention, and is not dependent upon the intent of some one else. Commonwealth v. Murray, 135 Mass. 530; Williams v. State, 178 Wis. 78, 189 N. W. 268; Minter v. State, 70 Tex. Cr. R. 634, 159 S. W. 286; People

v. Bunkers, 2 Cal. App. 197, 84 P. 364, 370; People v. Fitzpatrick, 78 Cal. App. 37, 247 P. 601; Egan v. United States, 52 App. D. C. 384, 287 F. 958; 9 Corpus Juris, § 4, p. 404.

█ Judge MARTINEAU, in the former opinion, states that it seems to him that the admitted facts in the instant case are such as to prevent the conviction of Robinson. With this conclusion the other members of the court do not agree. The statement is based largely on what is conceived to be an attempt of the government to bring about the commission of the crime, and this leads to the question of illegal entrapment. Nowhere has the doctrine been more clearly expressed than by Judge Sanborn in Butts v. United States (C. C. A.) 273 F. 35, 37, 38, where he said: "It is not denied that, in cases where the criminal intent originates in the mind of the defendant, the fact that the officers of the government used decoys or truthful statements to furnish opportunity for or to aid the accused in the commission of a crime, in order successfully to prosecute him therefor, constitutes no defense to such a prosecution. * * * But when the accused has never committed such an offense as that charged against him prior to the time when he is charged with the offense prosecuted, and never conceived any intention of committing the offense prosecuted, or any such offense, and had not the means to do so, the fact that the officers of the government incited and by persuasion and representation lured him to commit the offense charged, in order to entrap, arrest, and prosecute him therefor, is and ought to be fatal to the prosecution, and to entitle the accused to a verdict of not guilty."

In the rather recent case of Cain v. United States (C. C. A.) 19 F.(2d) 472, Judge Faris has clearly stated the doctrine as follows: "True it is, that one who is not, and recently perhaps has not been engaged in violating the law, and who presently has no intention of violating it, may not through sympathetic appeals, or other impelling machinations of officers, or so-called stool pigeons be induced to commit a crime and then be prosecuted and convicted for committing it. But one who, as was defendant, is engaged in the business of unlawfully selling narcotics, may, by any ordinary and usual means of approach, be led to make another sale seemingly in the usual course of his dealings and then be prosecuted therefor. The cases are so numerous and the question is so well-settled as really to call for no citation of authority or additional exposition;" and has cited a large number of cases bearing

thereon. Ofttimes the question of whether there has been illegal entrapment cannot be determined except by the jury passing on the testimony.

Who originated in this case the idea of bribing Robinson not to appear in the case of the government against Marsh? Was it the government agents, or did the idea of securing this money originate with the defendant? Certainly, where the government understood that an attempt was being made to bribe one of its witnesses, so as to bring about his absence from the case, it had the right to investigate to find out the real situation, and had the right to try to detect the crime, even if it employed means which might seem to dissemble in order to attain the result. Of course, the government should not lead its citizens into crime, and if this was a mere scheme concocted on the part of the attorneys for Marsh to secure the co-operation with them of the officers of the government in order to induce Robinson to commit a crime and thus relieve Marsh from prosecution, and if this were carried out it would amount to legal entrapment. To so hold it would have to be assumed that the officers of the government, including the district attorney and his assistant, were engaged in a nefarious undertaking. There is nothing whatever to show that such is the fact. The most that could be claimed on the part of the defendants, we think, would be that the question of illegal entrapment might be for the jury.

Mr. Brewster, assistant United States attorney, became a witness on rebuttal to a most important and essential matter in the case, viz. whether or not defendant was a witness in the case of United States v. Marsh (a criminal proceeding), at the time he received the alleged bribe. No hard and fast rule can be laid down as to when it is permissible for a prosecuting attorney to become a witness against a defendant and remain as prosecutor. Circumstances might arise in the trial of a case making it necessary that the prosecuting attorney or his assistant become a witness, but these cases are few and exceptional. The function of a prosecuting attorney and a witness should be disassociated. A jury naturally gives to the evidence of the prosecuting attorney far greater weight than to that of the ordinary witness. Circumstances might exist where the prosecutor could not withdraw from the case. He might be the only attorney familiar with the case, and the only one engaged in the prosecution. The tendency of a situation where a prosecutor in a criminal case becomes a witness for the government is to prevent somewhat that fair trial to which a defendant is entitled. If this were the only question in the case, it might not be sufficient to warrant a reversal, but the practice of acting as prosecutor and witness is not to be approved, and should not be indulged in, except under most extraordinary circumstances. Here there were other counsel engaged in the case, and Mr. Brewster could, we assume, have withdrawn, without imperiling the government's case, when it was discovered that he was a necessary witness.

The statements set forth in the opinion in this case from the arguments to the jury show clearly, we think, that the prosecuting attorneys went beyond the evidence. The court sustained some of the objections to the argument, but that was not sufficient. The jury should have been clearly instructed to pay no attention to the portions of the arguments to which objections were sustained. It cannot be doubted that those portions of the arguments to which Judge MARTINEAU has referred and some other portions were highly prejudicial to the defendant. In addition to the cases cited by Judge MARTINEAU, we may cite the case of Johnston v. United States (C. C. A.) 154 F. 445, 449, and quote therefrom the clear language of that court on the subject as follows: "The use of language by counsel, calculated to prejudice a defendant and not justified by the evidence, is improper and censurable, and should be discountenanced by the court. In such a case, it is the duty of the trial court to set aside the verdict unless satisfied that the improper language was not instrumental in securing it. But invective based on the evidence and inferences legitimately to be derived therefrom are not inhibited, and it is usually within the discretion of the trial court to determine whether or not the limits of professional propriety have been exceeded. Ordinarily the exercise of that discretion will not be reviewed in an appellate court unless the invective is so palpably improper that it may be seen to have been clearly injurious."

In the further proceedings in this case it should be understood that the reversal thereof is because of improper prejudicial argument to the jury. The original decision of this court reversing the judgment in the case will stand. The purpose of this opinion on rehearing is merely to clarify the situation. The case is remanded for further proceedings in harmony with this opinion.

MARTINEAU, District Judge, adheres to the views expressed in the former opinion.