Donald Allen BENTLEY, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. 228.

Supreme Court of Alaska.

June 17, 1964.

Peter LaBate, Anchorage, for appellant.

Robert C. Erwin and Dorothy Awes Haaland, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

The question here concerns the extent of the obligation of the state to furnish counsel to an indigent defendant.

Appellant was indicted for assault with a dangerous weapon and convicted of this offense by a jury on February 16, 1962. During the trial appellant was represented by counsel of his own choosing, Peter La-Bate, Esq. He was sentenced to serve three years on February 26, 1962. On March 1, 1962 appellant filed notice of appeal and an affidavit of poverty. The affidavit stated as grounds for appeal that appellant was prejudiced by the remarks of the prosecutor and that there was not sufficient evidence to support the verdict. On March 8, 1962 appellant's motion to proceed in forma pauperis was denied by the trial judge. On March 7, 1962 the trial judge revoked the probation granted appellant under a previous conviction and sentence for the crime of assault with a dangerous weapon and ordered appellant to serve the balance of the three year sentence which was to run concurrently with the three year sentence imposed on February 26, 1962. On March 13, 1962 the trial judge executed the certificate provided for in Supreme Ct.Rule 43 [1] to the

1. Rule 43 Rules of the Supreme Court provided in part.

"(a) Fees and Costs. The superior court may authorize an appeal or petition for review, without prepayment of fees and costs or the giving of security therefor, by a person who makes affidavit that he is unable to pay such fees or costs or give security. The affidavit shall state the nature of the appeal or petition and affiant's belief that he is entitled to redress.

"An appeal or petition for review may not be taken in forma pauperis if the su-

effect that he was convinced that appellant's request that he be permitted to appeal in forma pauperis on the ground that the prosecutor was guilty of misconduct and the insufficiency of the evidence were without merit and not taken in good faith. Notice of appeal, prepared for appellant by his trial counsel at the direction of the trial court had been filed March 1, 1962. After appellant had been sentenced his trial counsel indicated to the trial court that he did not wish to represent appellant on an appeal in the event the trial court should grant appeal in forma pauperis, but did agree to file appellant's notice of appeal and the motion and affidavit for forma pauperis privilege.

When appellant had taken no steps to perfect his appeal and had not appealed the order of the trial judge denying forma pauperis, this court was faced with the problem of how to dispose of the pending appeal without prejudicing any of appellant's rights as defined by recent United States Supreme Court decisions.

The basic question to be determined seemed to be whether or not appellant had a meritorious ground for appeal, or, expressed in alternative language, whether his appeal was taken in good faith,[2] for if the grounds for appeal were not meritorious, or the appeal not taken in good faith, there seemed to be no justification for incurring the expense of preparing a full trial transcript and appointing counsel to prosecute the appeal, all at state expense.

Accordingly on May 8, 1962 the Clerk of the Supreme Court directed the following letter to counsel who represented Bentley at the trial:

"Dear Mr. LaBate:

"The Supreme Court has before it the question of whether Donald Allen Bentley, defendant in the captioned case, has any meritorious ground for appeal in forma pauperis from the judgment of conviction which he is now serving at McNeil Island Penitentiary.

"The court notes that you represented the defendant in the trial which resulted in his conviction and hereby appoints you as his counsel in the matter now pending before the court.

"Pursuant to this appointment you are requested to:

"(1) Confer or correspond with Donald Allen Bentley to obtain his views and statement of meritorious grounds on which an appeal might be based.

"(2) Confer with the District Attorney and the trial judge who tried his case to obtain their impartial views concerning any ground for appealing the conviction.

"(3) Check the electronic recording of the trial and exhibits to the extent necessary to evaluate all grounds for appeal that may have come to your attention as a result of your investigation and personal knowledge of the case.

"(4) Perform the legal research necessary to give final evaluation to any ground for appeal that may have come to your attention.

"(5) Do any other thing necessary in your opinion to give Donald Allen

---

perior court certifies in writing that it is not taken in good faith.

· "(b) Costs of Transcript and Brief. In any civil or criminal case, upon the filing of a like affidavit, the superior court may direct that the expense of preparation of the record, of furnishing a transcript of the evidence or proceedings, and of the costs of duplicating briefs, be waived.

· "(c) Counsel. In criminal matters the superior court may appoint an attorney to

represent any such person unable to employ counsel."

2. See 28 U.S.C.A. § 1915 from which the language of Supreme Ct.R. 43 was taken. See concurring opinion of Mr. Justice Clark in Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331, 336 (1964) discussing the various United States Supreme Court interpretations of this section.

Bentley's trial a full and fair evaluation to determine whether he has any meritorious ground for appeal.

"After you have completed the investigation as outlined above, you are requested to report to the Clerk of the Supreme Court in writing (original and three legible carbon copies) stating in fair detail the results of your investigation under items 1 through 5 above and describing any other efforts made by you in that respect on behalf of Mr. Bentley. Your report should conclude with a specific recommendation to the effect that there is, or is not, in your opinion, a meritorious ground upon which to base an appeal. If the recommendation is that a meritorious ground for appeal exists, the same shall be briefly stated.

"Upon receipt of your report, you will be paid $75.00 as compensation for your services.

"If, after studying your report, the court should grant Mr. Bentley the right to appeal in forma pauperis, you will be appointed to represent him in the appeal and you will again be compensated in an amount to be determined by the court for prosecuting the appeal.

"It is urgently requested that you not decline this appointment for other than the most compelling reasons. Whether or not Mr. Bentley would wish to have you represent him has no bearing on the matter as far as the court is concerned. The court is interested in obtaining a full, fair and impartial evaluation of the merits of any ground for appeal Mr. Bentley may have. Because of your familiarity with his case you are the most competent lawyer available to do this for the court.

"This letter, written by direction of the court, is your authority to examine all court records in the case and to arrange for access to the electronic recording of the trial with the Clerk of the Superior Court in Anchorage."

On June 12, 1962 attorney LaBate reported to the court by letter as follows:

"Pursuant to your instructions, I have had conferences with Judge Fitzgerald and Mr. Merbs pertaining to determining whether or not an appeal should be allowed in the above entitled matter.

"I have also received a letter from the defendant setting forth his views for grounds for appeal. I have contacted the Clerk of the Superior Court and arranged to have certain parts of the tape played back so that I could study the record and have listened to several portions of the tape. I have reviewed the law in reference to the record to determine whether or not there is ample grounds for appeal to the State Supreme Court. The most probable grounds for reversing this conviction is, in my opinion, the comment of the prosecutor in his final argument. Mr. Merbs stated in summing up 'This was the motavating [sic] force that brought three hoods, so to speak'. Judge Fistzgerald [sic] then addressed the jury as follows: 'The jury will disregard that. You may refer to them as the defendants.'

"I have examined the case of Frank Marrone vs. State of Alaska, Opinion No. 27 of the State of Alaska Supreme Court. Here Mr. Hayes referred to the appelant [sic] as a 'hood', and other derogatory remarks. In the Marrone case the defendant took the witness stand. He was pictured by his evidence and the evidence of other witnesses as a person of low moral character. In the case which we are dealing with here, neither the defendant nor the other defendants tried with him took the witness stand, nor did they present other witnesses. The testimony in this case was completely limited to testimony specifically pertaining to the acts out of which the charge arose.

"We then are confronted with the proposition as to whether or not the prosecutor can, as a matter of course, merely because a person is being charged with a crime of violence, call the person so charged, 'a hood.' I believe that the Marrone case was not intended to cover the matter which we have before us.

"The Courts have, on many occasions, held that improper remarks by the prosecutor was grounds for reversal or for a new trial. (Robinson v. United States of America [8 Cir.] 32 F.2d 505 [66 A.L.R. 468]; State v. Tiedt [115 Mo. 357] 206 SW 2d 524 Mo. (1947); 46 LRA Pages 658 through 672.

"We now turn to the question of whether or not instruction by the trial judge to the jury to disregard the statement of the prosecutor was sufficient to cure any error caused by the prosecutor's statement. There is ample grounds for holding that such an instruction will cure the error caused by the remark. (53 Am.Jur. Page 408 and 409)

"I believe there was ample evidence in this case for the jury to convict."

The matter was then considered by this court and on June 27, 1962 Bentley was advised that the court's decision was that he did not have a meritorious ground for appeal and would not be granted leave to appeal in forma pauperis. On August 27, 1962 his appeal was dismissed for failure to take any of the steps necessary to perfect it.

On June 10, 1963 the United States Supreme Court vacated the judgment of this court and remanded this case for reconsideration in the light of Douglas v. California,[3] Lane v. Brown [4] and Draper v. Washington.[5]

In comparing the facts of the case before us to those in Douglas, the difference seemed to be that in Douglas the independent investigation of the record made by counsel and the court was confined to the documents on file without a transcript. In our case the electronic recording of the entire trial was available to investigating counsel and was used by him in his effort to determine whether Bentley had a meritorious ground for appeal.

In Lane v. Brown the objection to the procedure was that the Public Defender alone could decide whether there was any merit to an appeal of the adverse decision on the writ of coram nobis to the Supreme Court of Indiana and order the preparation of a transcript. In our case the investigating attorney merely advised the Supreme Court of the results of his investigation with his statement of opinion. The decision was made by the Supreme Court.

The difference between this case and Draper is that the complete electronic recording of the trial was available to the investigating counsel and was used by him. The judge who tried the case had no authoritative part in the procedure. The Supreme Court had available to it the complete electronic recording of the trial and could and would have used it in appraising the investigating attorney's report if they had deemed its use to be helpful or necessary in making their decision.

Accordingly, on July 5, 1963 this court appointed Peter LaBate, Esq., appellant's trial counsel, to be counsel for his appeal. Counsel was advised that he had authority to order as much of the trial transcript as he deemed necessary, without charge.

On July 9, 1963 counsel wrote to the Clerk of this court advising that he had on that date written to appellant requesting his ideas of what should be included in the statement of points and requesting addi-

3. 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

4. 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963).

5. 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963).

tional time within which to file a statement of points. An extension to August 1, 1963 was granted.

On July 9, 1963 appellant wrote to the Clerk of this court protesting the appointment of Peter LaBate as counsel for the appeal on the ground that he had demonstrated that he was antagonistic in previously reporting to the Supreme Court that no meritorious ground for appeal existed. Appellant requested that Mr. LaBate be removed and other counsel appointed.

Appellant's request was denied by the court and appellant was so advised on July 23, 1963 in a letter from the Chief Justice reading as follows:

"This replies to your letter of July 9, 1963 requesting that we rescind the appointment of Mr. LaBate as your counsel in your pending appeal and appoint other counsel.

"We believe that Mr. LaBate will make a thorough conscientious effort to present all points of your appeal in their best possible light. The fact that he has previously expressed the view that meritorious grounds for appeal were not found after diligent research will not prevent him from mustering the best available arguments in support of every possible point, when requested to do so by this court.

"Since he is intimately familiar with your case, we consider him the best available counsel for appeal purposes and therefore deny your request."

Counsel filed a statement of points on appeal on August 30, 1963 one of which was that this court erred in appointing counsel on appeal who was completely unacceptable to the appellant.

On October 11, 1963 appellant wrote to the Clerk of this court as follows:

"Urgently request sufficient additional time within which to file a supplemental brief to the appeal brief submitted by Mr. Peter LaBate of Anchorage on my behalf in the case of Bentley vs. Alaska 62–58 Cr. now before this court.

"I find the appeal brief submitted by Attorney Peter LaBate wholly and thouroughly [sic] inadequate and absolutely does not present my views on appeal nor does it bring into focus the points which were presented to the United States Supreme Court on which 'certiorari' was granted and subsequently remanded to this court.

"I was not informed of nor allowed to approve of the contents of the brief of Peter LaBate and of which I have just now received a copy and find it entirely frivolous and without merit as expressing my views on appeal.

"No mention was made of perjured and conflicting statements which I have continuously relied upon appeal.

"No mention was made of possible double jeopardy due to being tried first by the City of Anchorage, needing the same evidence to convict.

"No mention was made of the courts refusal to publish the first verdict and informing the jury they had brought in the wrong verdict and directing the jury to return and bring in a different verdict.

"No mention was made of knowledge beforehand of perjured testimony by the prosecuting authorities.

"No mention was made of the states chief witness taking the stand under oath under two different names.

"No mention was made of the states two main witnesses giving exactly opposite testimony at trial in the instant case and at preliminary hearing which bound your Petitioner over to the Grand Jury and placed petitioner in a position of extreme surprise and resulted in trial of your Petitioner.

"I have previously written Mr. Peter LaBate and fully expressed these views and urged him to adequately present these views on appeal which he has absolutely refused to do.

"I submit that the intentions of the Supreme Court of the United States in granting 'Certiorari' and remanding to this court for reconsideration was to afford an adequate review on appeal and further that these intentions are gravely circumvented and violated by Mr. Peter LaBate not fully and adequately presenting my views on appeal. All of which denies me due process and equal protection of the law and absolutely does not present an adequate case for review by this court and goes only to insure rather than upset the conviction of your petitioner in this case.

"For the foregoing reasons I respectfully request (30) thirty days time within which to prepare and file a supplemental brief that will present my views on appeal and put forth the full case to be considered by this court."

On October 21, 1963 this court denied appellant's request to file a brief prepared by him to be supplemental to the brief prepared by his counsel. Appellant nevertheless filed with this court his supplemental brief and was advised by the Clerk that the brief would be delivered to the court along with the brief prepared by his attorney.

On January 31, 1964 appellee filed a short typewritten brief opposing appellant's supplemental brief.

We consider now the points on appeal presented in the brief submitted by appellant's court appointed counsel.

■ In final argument to the jury the District Attorney made reference to the three defendants, one of whom was appellant, as follows:

"Now you can surmise it as best as I can. This was the motivating force that brought three hoods to the * *

"THE COURT: Well—the jury is going to disregard that. You may refer to them as the defendants."

Appellant contends that the statement was error; that it prejudiced the jury against him and that the prejudice was not removed by the court's instruction to the jury.

The evidence at the trial was that the appellant and his two co-defendants entered a motel apartment in the early hours of the morning and attacked the male occupants with blackjacks. The remarks of the District Attorney had a basis in the evidence. The facts are very similar to those in Marrone v. State where we held that the remarks did not constitute reversible error.[6]

It appears from the transcript of proceedings that the trial court acted promptly to instruct the jury to disregard the remarks. Counsel for appellant made no claim of prejudicial error at the trial and we are of the view that no prejudice resulted.

■ Appellant next contends that this court erred in appointing his trial counsel to represent him in this appeal.

Appellant employed Mr. LaBate as counsel of his choice to conduct his defense. This court subsequently employed Mr. LaBate to investigate all aspects of appellant's trial to determine whether any meritorious ground for appeal in forma pauperis existed.

Appellant contends that since Mr. LaBate reported to this court that he found no meritorious ground for appeal, he should not have been appointed counsel for the appeal because of his demonstrated prejudice. Appellant argues that confidence is one of the most important elements of the attorney-client relationship and that it was lacking in this case; that a person charged with a serious crime is not only entitled to a defense, but to a good defense and not only entitled to an attorney, but to an attorney whom he feels will give him a good defense. Appellant argues that in this modern age, where the poor stand before the court equally with

6. 359 P.2d 969 (Alaska 1961).

the rich, that the above aspects have been too long overlooked.

We are convinced that the fact that Mr. LaBate had investigated appellant's trial and had reported to this court that he found no meritorious ground for appeal would not prejudice him against appellant's cause so that he could not fairly represent him in the appeal. Mr. LaBate is an experienced trial attorney, thoroughly aware of the obligation owed by an attorney to his client and aware that the same obligation applies where the relationship has been created by court appointment. We had and have no doubt that Mr. LaBate set about to do and did as good a job of representing appellant's cause as could have been done by any attorney.

Appellant argues that the state was obliged to appoint counsel in whom he had confidence and that he did not have confidence in Mr. LaBate. The obligation of the state may, in time, be interpreted to be as broad as appellant contends, but we are satisfied that that is not the law at present. Confidence can be produced in a client by any number of intangible factors that may have nothing to do with the ability of the lawyer retained or the quality of representation that he can or will provide for his client. We will concede that a "rich" criminal defendant, if there are legal standards by which such an individual can be determined, is free to shop until he has found and retained a criminal lawyer in whom he has confidence. As we have said, this does not mean that he will necessarily obtain first class representation; it merely means that the client *thinks* this is going to happen. The compensation to be paid counsel in such instances is a matter of private agreement between attorney and client.

We believe that the mental condition that appellant contends should have been provided for him could only be produced by the state making available a generous supply of funds and allowing the defendant freedom to retain his own counsel. Although unlimited funds and freedom to choose counsel is a prerogative of the rich criminal defendant, we must hold, as a practical matter, that the state is not obligated to place appellant in the same position as the rich defendant in this respect.

We must hold that where the state has appointed capable counsel, provided him with a record, a transcript, full access to the electronic recording of trial proceedings, free facilities for the printing of his brief and reasonable compensation for his professional efforts, that it has discharged its constitutional obligation to an indigent defendant.[7]

In the case before us, appointed counsel had originally been appellant's choice as defense counsel for the trial. He was, as a result of having conducted the entire defense, thoroughly familiar with every aspect of the case. Because of this experience he, above all other counsel, would be most likely to be aware of defects in the trial, if any there were.

It is argued though, that after having been employed by the court to investigate the case, and having reported that he could find no meritorious defense, that he should not have been appointed counsel for the appeal. New counsel, it is pointed out, may have detected error overlooked by Mr. LaBate.

We see no merit to this argument. Conceivably new counsel, even though unfamiliar with the case, might have discovered previously undetected error. On the other hand, in again working intimately with the record in preparing the appeal, Mr. LaBate might also have discovered error that he had theretofore overlooked. The latter possibility is just as great, if not greater, than the former.

The judgment below is affirmed.

7. Cf. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963) and Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963).