## Ehrenstrom, Appellant, *v.* Hess.

*Principal and agent — Sales — Commissions — Terms of sale — Authority of broker—Conflicting evidence—Sale under different terms—Written agreement—Alleged modification—Telephone conversation—Identification—Evidence—Case for jury.*

1. In an action by a broker against his principal for the recovery of commissions for negotiating the sale of goods, a verdict for the defendant will be sustained where it appeared that defendant had authorized plaintiff in writing to sell the goods on certain terms and the evidence was conflicting as to whether defendant subsequently gave him verbal authority to sell on different terms under which plaintiff effected the sale.

2. In such case where the subsequent verbal conversation was over the telephone the court did not err in refusing to permit a witness present in plaintiff's office at the time to testify as to what plaintiff said, where the witness did not go to the telephone himself, and it was not alleged that he knew who was at the other end of the wire; especially where plaintiff confirmed such telephone conversation by letter without mentioning therein any change in the terms under which he was authorized to make the sale; but the court properly permitted a witness in defendant's office to testify as to what defendant said over the telephone, where it appeared such witness answered the telephone, and was informed that the exchange of the city in which plaintiff's office was located was calling defendant, that the witness then called defendant to the telephone and heard him address plaintiff by name, and that defendant then stated that he would not change the original terms for the sale of the goods.

3. A witness who is in a room while a party is telephoning may not testify as to what the latter said unless it is first shown who was at the other end of the wire.

Argued June 11, 1918. Appeal, No. 13, Jan. T., 1916, by plaintiff, from judgment of C. P. Lancaster Co., Jan. T., 1916, No. 13, on verdict for defendant in case of Charles H. Ehrenstrom v. A. B. Hess. Before BROWN,

C. J., MOSCHZISKER, FRAZER, WALLING and SIMPSON, JJ. Affirmed.

Assumpsit for commissions as broker.

LANDIS, P. J., filed the following opinion sur plaintiff's motion for a new trial:

The plaintiff was a broker, or, at least, he was acting in that capacity in this transaction, located in the City of Philadelphia. The defendant was president of the Lancaster Chemical Company, which is located near Lancaster City. Hess apparently was individually the owner of an acid plant, situated at Perryville, in the State of Maryland. At the time this transaction arose, he was erecting, at that place, a concentration plant, for the purpose of reducing his raw acid to a higher form of sulphuric acid. On August 14, 1915, the plaintiff wrote to the defendant, stating that he had an inquiry for a larger quantity of sulphuric acid and asking the lowest prices and best deliveries. He followed this by a letter of like character, dated August 21, 1915. In answer thereto, the defendant sent him a letter, as follows:

"Lancaster, Pa., August 23, '15.

"Mr. Chas. H. Ehrenstrom,

   "Harrison Building,

     "Philadelphia, Pa.

"DEAR SIR:—

"Your favor of the 21st inst., received. Subject to being unsold, I beg leave to quote you on 200 to 250 tons per month of 66-2/10 degrees Beaume 95% H-2 S.O.-4 Sulphuric Acid, a price of $33 per ton of 2,000 pounds, f. o. b. tank cars, Penna. R. R. at Perryville, Md. Shipment to begin as soon as the writer can complete a concentration plant, which time is estimated to be about November 1st. Buyer to supply tank cars. If it is desired that the acid be shipped in containers other than tank cars, then said containers shall be supplied by buyer, or they will be supplied by seller and charged for at cost plus $2 per ton to cover extra labor in loading.

"Terms: 25% payable in cash at the time of signing of the contract and payment of the remaining 75% to be secured by an irrevocable credit.

"Awaiting your reply, I beg to remain,

"Yours very truly,

"A. B. HESS."

At the same time, he wrote: "I enclose herewith quotation on sulphuric acid. Should you make a sale of same, I hereby agree to allow you a commission of $3.00 per ton."

On October 9, 1915, there was a telephone conversation between Mr. Ehrenstrom and Mr. Hess, the former being at that time in Philadelphia and the latter at his office in Lancaster. The plaintiff asserted that, in the conversation, he told Hess that his clients would take his (Hess's) output, provided he would agree to furnish 250 tons between October 9th and December 31st, and, in addition, any acid that he might produce they would take, but that they wanted the exclusive output of his plant within that period, and that, for the next year, they would take up to 250 tons from him; that they would pay against the bill of lading, they would issue a sight draft against the bill of lading, one per cent. off for cash, and that they would guarantee the amount through a bank, and that Mr. Hess assented to this.

It may be conceded that, if Hess authorized Ehrenstrom to make such a contract with Harrison Brothers, and in pursuance of that authority Ehrenstrom did so, then Hess was bound to carry out the agreement or suffer the consequences, and that he was, in addition, liable to Ehrenstrom for his commissions. Be this, however, as it may, as the contract thus narrated by the plaintiff contains nothing as to the quality of the acid or the amount of the commission to be paid, I think it can fairly be assumed that the original proposition and the modification as thus made formed, according to the plaintiff's own understanding, a continuous transaction. If this proposition is not correct, then none of the letters or the nego-

tiations which preceded October 9, 1915, had anything to do with the case, and the plaintiff would not have presented them for the consideration of the jury. I do not intend to insinuate that they were improperly presented. On the contrary, I believe they formed part of the general transaction, and, as a consequence, were properly offered in evidence to elucidate the truth of the contention of the parties. The question before the jury was, whether or not there was a modification of the original contract. This was fully explained to the jury in the charge, and the evidence upon this subject was fully adverted to. It was stated that, if Hess did not modify his original proposition, then he was not liable to the plaintiff for commissions, for that proposition was admittedly different from the terms contained in the sale to Harrison Brothers, and that, if the plaintiff had no right to make a sale except on the terms originally stipulated, he could not, if he made a different sale, claim commissions from the defendant, even though the defendant refused to comply with the unauthorized sale. The jury were, however, also told: "But, on the contrary, if he did modify that agreement, if he agreed to the conditions as alleged by Ehrenstrom, then, of course, he is bound by them, and he could not then, after a bona fide offer had been made for the acid, nullify and refuse to fulfill it, without being liable to the plaintiff for the amount of commissions which he had contracted to pay on a sale being made." This was a submission to the jury of the exact question upon which the plaintiff now rests his case, and, taking the charge as a whole, I think it was a fair presentation of the claims of both the parties, and the jury were left to decide the point at issue between them.

The law is, that, "where one sues for damages for a breach of contract, the burden is on him to establish a clear case of something actually agreed to. Where a proposal is made on one side, and an acceptance is given on the other not according to the terms of the proposal, the

parties are not bound: Slaymaker v. Irwin, 4 Wharton 369: 'To constitute a contract, the acceptance of the offer must be absolute and identical with the terms of the offer. If one offers another to do a definite thing, and that other person accepts conditionally, or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat, or it is in effect a counter proposal:' Joseph v. Richardson, 2 Pa. Superior Ct. 208; Clements v. Bolster, 6 Pa. Superior Ct. 411. To bind the parties, an acceptance must be in exact conformity with the proposal. A qualified acceptance does not constitute a contract": Swing v. Walker, 27 Pa. Superior Ct. 366. I do not think any error was committed in this regard.

It is, however, claimed that the court should have permitted Walter R. Hosack, a witness called for the plaintiff, to testify as to a telephone conversation alleged to have been had between the plaintiff and the defendant on October 9, 1915. The witness stated that he was in Mr. Ehrenstrom's office on that day, and that he heard Mr. Ehrenstrom talk to someone. He was not at the telephone himself, and it was not alleged that he knew who was at the other end of the line. He was asked what Mr. Ehrenstrom said, and an objection to the question being made by the defendant, he was not permitted to testify on this subject. A similar question arose on the part of the defendant. It was testified by Miss Eby that a telephone call came to the office of the defendant; that she answered the call, and the exchange girl talked to her and said, "Philadelphia is calling A. B. Hess;" that she called Mr. Hess to the 'phone, and that she heard Mr. Hess say, "Mr. Ehrenstrom," apparently addressing him, and that Mr. Hess said "he wouldn't accept the proposition unless they advanced 25 per cent. of the money," and repeated that twice; that then the other party said something, and Mr. Hess said, "Well, then, you can't have the acid," and, also, "I will not change those terms." This evidence was objected to,

but admitted.   The plaintiff now claims that, if one con-
versation was admissible, the other was, and that the
admission of the one and the exclusion of the other
show manifest error.

It has been decided in a number of cases that tele-
phone conversations are generally admitted in evidence
though the general rule has to some extent been modified
in this State.   Thus, in Swing v. Walker, supra, it ap-
peared that the plaintiff offered to prove a conver-
sation with one of the defendants, in order to show ad-
missions on his part.   It appeared, from the testimony
of the witness, that he was not acquainted with this de-
fendant's voice and could not identify it.   The Superior
Court said: "The offer to prove a conversation over the
telephone was clearly inadmissible......No discussion
is necessary to show that a declaration or admission is
not admissible unless the party making it is identified
as the person sought to be charged.   The introduction
of the telephone has not changed the rule of evidence
on that subject.   If the witness had been in the presence
of the person at the other end of the line, the declara-
tions that person would not have been admissible with-
out evidence that he was one of the defendants."

The distinct question as to whether a witness, who is
in a room with plaintiff while the latter is telephoning
to the defendant, can testify what he heard the plaintiff
say during the course of conversation has not arisen nor
been decided in this State.   That question, however, has
been determined in other jurisdictions.   Thus, in Mc-
Carthy v. Peach, 186 Mass. 67 (70 N. E. Rep. 1029),
MORTON, J., delivering the opinion of the court, said:
"The evidence that was admitted cannot be regarded
as heresay evidence, or declarations made by the plain-
tiff in his own interest, simply because the witness did
not know of his own knowledge that the other party to
the alleged conversation was the defendant, or that
there was any other party, or that the defendant heard
what purported to be said to him.   If the alleged con-

versation took place as the plaintiff testified that it did, then what the plaintiff said was admissible as a part of it. Whether it did take place as alleged, or was fictitious, was a question of fact for the jury." In Miles v. Andrews, 153 Ill. 262 (38 N. E. Rep. 644), it is held that, "where it is admitted that plaintiff and defendant conversed by telephone at a certain time, a witness who heard one side of the conversation may testify to it, though he could not hear the replies, and does not know of his own knowledge with whom the conversation was held; "and in Dannemiller & Sons v. Leonard, 16 Ohio Cir. Ct. Rep. 686, that, where a conversation by telephone is carried on by parties to an action about the subject-matter of the action, a witness who heard one of them talking into the telephone may testify to what he heard. There are also other cases to the same effect. Under these cases, and also under Swing v. Walker, the court was evidently right in admitting the testimony of Miss Eby; but should it not also have allowed Mr. Hosack to testify? If the situation of both the witnesses was the same, the principle should certainly be applied to both alike; but, as a matter of fact, the record shows that the exclusion of the testimony of Hosack was placed upon a different ground. It appears in plaintiff's case that, after the conversation held by Ehrenstrom with Hess on October 9, 1915, Ehrenstrom sent the following letter to Hess:

"Philadelphia, October 9, 1915.

"Mr. A. B. Hess,                          ＼

"Lancaster Chemical Co.,

"Lancaster, Pa.

"DEAR SIR:—

"Confirming my telephone conversation with you over the Long Distance telephone, this afternoon, I beg to advise that you are to meet me at my office at 9:30 o'clock, Monday morning, for the purpose of going with me to my client, Harrison Brothers, of this city, to close contract for 250 tons monthly of Sulphuric Acid. Said

price to be $33.00 f. o. b. factory at Perryville, Md., which will be the basis on which they will want to close.

"Awaiting to see you on Monday, I am,

"Very truly yours,

"CHAS. H. EHRENSTROM."

The court, therefore, held that Mr. Ehrenstrom having reduced his new proposition to writing, what he put in writing was binding upon him and could not be affected by the antecedent negotiations. It is hardly necessary to refer to the well-known principle of law that, where the engagements of the parties are put in writing, the writing is not only the best but the only evidence of the agreement. If, therefore, Mr. Ehrenstrom's contention is correct, he put in writing the terms on which he desired the defendant to close the contract with Harrison Brothers on the succeeding Monday morning, and distinctly stated that that was the basis "on which they will want to close." The writing of itself does not signify a closed agreement. If, then, Ehrenstrom put in writing the terms confirming his telephone conversation with Hess, what difference could it make what Hosack's version of the telephone conversation on the part of Ehrenstrom was? If it was the same as is set forth in the writing, no harm was suffered by the plaintiff. If it was different, it could not be effective, because it was superseded by the writing. Hosack did not hear what Hess said to Ehrenstrom, and what Ehrenstrom said made no difference, in view of his subsequent acts.

For these reasons, I am not convinced that the claim of the plaintiff that a new trial should be granted has any merit. The evidence was heard by the jury at length and was carefully considered by them. I do not see any reason why the verdict should be interfered with, and, therefore, I think the rule for a new trial should be discharged.

Verdict for defendant and judgment thereon. Plaintiff appealed.

*Errors assigned,* among others, were various rulings on evidence and the charge of the court.

*Arthur N. Sager,* of the New York Bar, with him *S. Z. Moore,* for appellant.

*John M. Groff,* for appellee.

PER CURIAM, July 17, 1918:

We find nothing in the assignments of error calling for a retrial of this case, and the judgment is affirmed on the opinion of the learned president judge of the court below discharging plaintiff's rule for a new trial.