29257. THOMPSON *v.* THE STATE.

DECIDED APRIL 3, 1942.

*Robert B. Blackburn, H. A. Allen,* for plaintiff in error.

*John A. Boykin, solicitor-general, Durwood T. Pye, E. E. Andrews, Daniel Duke,* contra.

MacIntyre, J. Clarence J. Thompson was convicted of the offense of cheating and swindling. The indictment was in three counts. We set forth one of the counts as representative of each

of the three. It was charged in count 1, with omission of the formal parts, as follows: "The grand jurors . . charge and accuse Clarence J. Thompson with the offense of misdemeanor (defrauding the City of Atlanta) for that the said accused, in the County of Fulton and State of Georgia, on the 1st day of November, 1940, . . being then and there an inspector, employed by the City of Atlanta, in the waterworks department, did conspire with Ben I. Tesler to defraud the City of Atlanta, a municipal corporation in above State and county, out of a large quantity of water, and did so defraud said City of Atlanta out of 846,700 cubic feet of water, of the value of $1023.56, and the property of said City of Atlanta, in the following manner, to wit: The City of Atlanta was engaged in selling and supplying water to customers and consumers. The water sold and supplied to its customers and consumers is paid for on the basis of the cubic feet supplied, as measured by the water meter installed by the city, at the established rates. Accused conspired with said Ben I. Tesler, who was operating a laundry under the name of Independent Laundry at 902 West Peachtree Street, N. W., in Atlanta, and did enter into an agreement with said Tesler to the effect that for a monetary compensation, consisting of one half of the amount saved by Tesler, he (the accused) would arrange for his water bills to be less than they had previously been and less than they would be for the true amount of water used. In conformity with said agreement accused did change and alter the water meter located at the premises of said Tesler, by removing screws, opening the meter box and changing, altering and readjusting the mechanism of said meter in some manner which is to the grand jurors unknown so as to accomplish the result of having said meter fail to register and make a record of a substantial portion of the water flowing into and used on said premises. In conformity with said agreement and in said manner accused did cause the bills rendered monthly to the said Ben I. Tesler for the water used at said laundry to be less than they should have been for the amount of water actually used, accused accomplishing this object by the above-stated means of changing and altering and readjusting the said water meter, and by other schemes and devices unknown to the grand jurors. And as a result of the said changing, altering and readjusting said water meter, and by the scheme and device above set

forth, the readings upon said meter were lower than they should have been to the amount and of the value herein set forth. And as a result of the above-described fraudulent scheme and artifice, the City of Atlanta has actually been defrauded out of the said amount of 846,700 cubic feet of water, of the value of $1023.56. The offense herein alleged was unknown until the summer of 1940. And all the acts of accused herein complained of were and are contrary to the laws of said State, the good order, peace and dignity thereof."

The defendant demurred generally to each count on the grounds that the indictment charges no crime or offense in this State, and does not sufficiently allege all the elements necessary to constitute cheating and swindling under Code, § 26-7410. To the overruling of his demurrers and his motion for new trial the defendant excepted.

When this case was originally considered by this court the judgment of the trial court was reversed upon the theory that the judge erred in overruling the demurrers to the indictment. The writer dissented from that ruling. Upon motion by counsel for the State, a rehearing was granted. Upon a rehearing, the former opinion of this court is withdrawn and the judgment therein, dated January 16, 1942, is vacated, and the following opinion affirming the judgment of the trial court is substituted therefor; all of which has been done before the adjournment of this the January term, 1942.

The defendant made a motion to strike the motion for rehearing on the ground that there is no authority of law permitting the State to make such a motion, the State not being a party to the case. After thorough consideration, we are of the opinion that the State may file such a motion and be heard and the motion is overruled. See in this connection *Hurt* v. *State,* 62 *Ga. App.* 878 (10 S. E. 2d, 136).

■ "Any person using any deceitful means or artful practice, other than those which are mentioned in Part XII of this Title, by which an individual, or a firm, or a corporation, or the public is defrauded and cheated, shall be punished as for a misdemeanor." Code § 26-7410. Under this statute, the effect of the allegations in the indictment in this case is that the tampering with the meter through which the water flowed from the city's pipes into the con-

sumer's pipes so changed it that it registered a less number of cubic feet of water than actually passed through it, and that by reason of this trick, scheme, or device, the city was defrauded and cheated. The authorities have established too firmly for judicial overthrow the following distinction between larceny and cheating and swindling: "If by fraud [deceitful means and artful practice] a person is induced to part with his goods, meaning to relinquish his property in them as well as his possession, he who thus obtains them may be chargeable with a cheat at the common law or under the statutes against false pretenses, yet not with larceny; because, it is assumed, the owner having actually consented to part with his ownership, there was no trespass in the taking. But this doctrine, to repeat, refers only to cases in which the ownership of the goods is meant, by the owner, to pass with them. And if the one consents to part with merely the possession, the other who takes them intending a theft goes beyond the consent, and irrespectively of the question of fraud commits larceny." 2 Bishop's Criminal Law, 469, §§ 808 (2), 809; *Kent* v. *State,* 66 *Ga. App.* 147 (17 S. E. 2d, 301). In *Harris* v. *State,* 81 *Ga.* 758 (7 S. E. 689, 12 Am. St. R. 355), it was stated: "The rule is, that 'if one, meaning to steal another's goods, fraudulently prevails on the latter to deliver them to him, under the understanding that the property in them is to pass, he commits neither larceny nor any other crime by the taking, unless the transaction amounts to an indictable cheat. But if, with the like intent, he fraudulently gets leave to take possession only, and takes and converts the whole to himself, he becomes guilty of larceny; because, while his intent is thus to appropriate the property, the consent which he fraudulently obtained covers no more than the possession.' "

The city intended for the water to be delivered to the consumer by passing it from its pipes or possession into the consumer's pipes or possession, and be measured by the water meter installed for that purpose, and even if the consumer, meaning to steal the water, fraudulently prevailed upon the city to deliver it to him with the understanding that the possession and property in the water were to pass, the consumer committed neither larceny nor any other crime by the taking, unless the transaction amounted to an indictable cheat. *Harris* v. *State,* supra. There is nothing in the indictment alleging that the consumer was to keep the water

for the city for any special purpose, or that the water was to be disposed of by the consumer in accordance with any direction of the city, or that the city was expecting the water or any part thereof to be returned to it, or that the consumer obtained the possession of the water against the city's consent. It is contended that there was no "voluntary parting with knowledge of the property on the part of the owner of it." Just why then did the city not only consent but make arrangements for its water to pass from its pipes through a meter into the pipes of the consumer? It seems to us that, after both the city and the consumer had agreed upon a purchase price, this was but a method of completing the sale of the water on a credit by thus delivering it to the consumer, and that the sale was unconditional, the intention being that the possession and the title should pass to the consumer. *Foster* v. *State,* 117 *Ga.* 39 (43 S. E. 421). Thus, the city received the amount of money it expected and the amount which would have been due if the water passing through the meter had been only as the city thought (*Lee* v. *State,* 36 *Ga. App.* 773, 775, 138 S. E. 257), and believing it had received the entire purchase price according to the sale it voluntarily parted with both the possession and the title. The changing of the meter by the defendant, which kept the city in ignorance of the true value of the water delivered, was the artful and deceitful means which the consumer and the defendant employed to defraud the city of a part of the purchase price of the water sold, by keeping the city in the belief that the consumer had obtained less water than he actually did obtain, and thus to satisfy the city with an inadequate sum given in exchange for the water. *Jones* v. *State,* 97 *Ga.* 430 (25 S. E. 319, 54 Am. St. R. 433).

We do think that the offense alleged in the indictment was cheating and swindling, because title to the water passed to the consumer when the water went from the city's pipes through the meter into the consumer's pipes and all the water involved went through the meter. The water that went through the meter ceased to belong to the city. The meter was installed for the purpose of measuring the amount of water sold. The validity of the sale did not depend upon the correctness of the measure. Merely because the meter did not measure the water correctly did not mean that a sale did not take place. To illustrate: Suppose one walked into

a grocery store and took a ham from the box where it is kept and the merchant put it on the scales and weighed it and the buyer paid the merchant for the ham according to the weight shown by the scales, and then took the ham home with him, would title to the ham be in the buyer, or would it remain with the merchant because the night before the buyer had gone into the store and tampered with the scales so as to cheat him, which he had done by reason of changing the scales and later buying the ham? We think title would be in the buyer. Title to this ham passed to him, and the correctness of the scales did not constitute the test. The merchant intended to sell the ham which he put on the scales, then delivered it to the buyer to do whatever he wished with it. Of course, in a proper civil action the merchant could reassert his title to the ham, because title to the ham was obtained by fraud, and likewise in the instant case the city (except for the impossibility thereof) could later reassert its title to that water because that title was obtained by fraud; but that is not the test in the criminal case, for title actually passed and, until it is reasserted, title remains in the purchaser of the ham, and, in the instant case, in the water. "A vendee who has obtained title to property under a sale induced by fraud is the owner of the property until the seller elects to rescind the sale, and a bona fide purchaser, without notice of the fraud, from such a vendee, will acquire a good title." *Mashburn* v. *Dannenberg Co.*, 117 *Ga.* 567 (4) (44 S. E. 97). Such would not be the case if the bona fide purchaser acquired his title from a thief who had no title. A defendant who has obtained title by fraud can not, when prosecuted for that fraud, set up the very fraud itself as a defense.

Thus, it is apparent that here the city parted with the possession and ownership voluntarily and absolutely, but on account of the deceitful means and artful practice it was defrauded of its property, to wit: a part of the purchase price of the water sold. Clark v. State, 14 Okla. Cr. 284 (170 Pac. 275, L. R. A. 1918C, 577). The indictment was not subject to general demurrer.

■ Under the ruling in *Lee* v. *State,* 66 *Ga. App.* 613 (18 S. E. 2d, 778, 781), the court did not err in refusing to give in charge the request set out in special ground 1.

■ Special ground 2 sets out a request to charge on the law of cheating and swindling which states in detail the essential ele-

ments of that crime. The defendant excepts to a refusal of the judge to charge in the language requested. The judge charged fully on the law of cheating and swindling and on the essential elements of that crime. The charge given covered plainly and in substance the principles of law stated in the request to charge, and the failure to give the charge in the language requested was not error. *Clark* v. *State, 52 Ga. App.* 61 (2) (182 S. E. 195).

■ The judge did not err in failing to give in charge the request set out in special ground 3. The defendant was not entitled to have the court adopt his language, framed in argumentative form, where the charge to the jury as a whole covered plainly and in substance the principles of law stated in the request; and the failure to give the charge in the language requested was not reversible error. *Summer* v. *State, 55 Ga. App.* 185 (2) (189 S. E. 687).

■ The defendant, in ground 4, excepts to the charge of the court on other transactions, or other offenses, to the effect that they were not introduced for the purpose of convicting the defendant of the offenses charged, but for the purpose of showing plan or scheme, state of mind, intent, etc. The Supreme Court in *Farmer* v. *State,* 100 *Ga.* 41 (2) (28 S. E. 26), a cheating and swindling case, has held that "Evidence of this character is admissible as tending to show a fraudulent intent and scheme on the part of the accused to obtain the property of others without paying for the same, and as warranting an inference that the transaction with the prosecutor in the case on trial was made in pursuance of the same general purpose." The charge excepted to was in effect in the language of that quoted from the *Farmer* case, and was applicable to the facts of the instant case. No reversible error is disclosed.

■ The defendant objected to the testimony of Ben I. Kaplan set out in ground 5, which was in effect that during the years 1937 to 1940, at the instance of the defendant, he entered into an agreement with the defendant whereby he would pay the defendant a certain sum of money to keep down his water bill, and to the further effect that, when he told the defendant the solicitor's office was questioning him, the defendant told him not to tell them anything, and to tell them that the sudden rise in his water bill was due to a leak in the pipe. The court overruled the objection and

the defendant excepted. The evidence sought to be excluded was relevant to the issue, showed some logical connection therewith, and revealed intent, design, scheme or plan, and it was not to be excluded because the act or transaction sought to be introduced in evidence happened to be punishable under our law as a crime. The true question is, not whether the other transaction was denominated a crime, but whether the evidence was relevant to the issue on trial. The judge did not err in admitting the evidence. *Barnes* v. *State,* 57 *Ga. App.* 183 (194 S. E. 839); *Farmer* v. *State,* supra.

■ The testimony of Elenor Williams set out in ground 6 comes within the rule stated in the preceding division of the opinion, and was admissible as another circumstance for the purpose of showing plan, scheme, and intent.

■ Ground 7 sets out testimony of George Tidwell to the effect that he had listened to a conversation between Ben I. Kaplan and the defendant concerning the former's conversation with the solicitor's office, set out in division 6 above. The defendant objected to it on the ground that Tidwell did not sufficiently identify the defendant's voice and therefore could not testify as to this conversation. It appears from the record that prior to this testimony of Tidwell, Kaplan had testified that he had had the conversation in question over the telephone from Tidwell's office; that he knew the defendant and recognized his voice. This testimony of Kaplan was admissible, it being for the jury to determine whether or not Kaplan had identified the defendant through the sense of hearing. *Fussell* v. *State,* 93 *Ga.* 450, 455 (21 S. E. 97). See *McClung* v. *State,* 62 *Ga. App.* 892 (10 S. E. 2d, 303). Therefore, we think the testimony of Tidwell as to the conversation was admissible to corroborate this previous testimony of Kaplan. The judge did not err in admitting same. *Aycock* v. *State,* 62 *Ga. App.* 812, 818 (10 S. E. 2d, 84).

■ Ground 8 objects to the admission of testimony of Mrs. Nora Hightower to the effect that she had paid the defendant $2 to hold down her water bill. Under the ruling in division 6 the judge did not err in allowing the testimony.

■ Ground 9 states that the witness Zode Smith was asked: "Do you retain title to any water that is consumed by customers after it passes through the meter?" The witness answered: "We

do not retain title to any water that is used by a customer after it passes through the meter. We do not exercise any control over the water after it flows through the meter into the premises of the customer." The defendant objected to the testimony on the ground that it was a conclusion, and that it was a legal question which the witness could not determine. The witness had already testified that he was manager of the waterworks department of the City of Atlanta. A corporation can speak and act only through its agents, and we think the question and answer were proper. See division 1 of this opinion. *Brooks* v. *Griffin,* 10 *Ga. App.* 497 (3) (73 S. E. 752); *Downs* v. *Brandon,* 49 *Ga. App.* 198 (174 S. E. 647).

Special ground 10 is based on allegedly newly discovered testimony of Mrs. A. G. Moore to the effect that she had had a conversation with Mrs. Hightower, a witness on the trial of the defendant for the offense in question, subsequently to the trial of the case, and Mrs. Hightower had told her that she never, as she had testified on the trial of the defendant, paid Mr. Thompson any money to check up her water bills at any time, and that her water bill had not been excessive until the latter part of 1940. This ground is controlled adversely to the defendant by *Moore* v. *State,* 59 *Ga. App.* 456 (1 S. E. 2d, 230). See Code, § 110-706; *Kent* v. *State,* 172 *Ga.* 905 (159 S. E. 238).

The evidence authorized the verdict. The judge did not err in overruling the demurrer to the indictment, or the motion for new trial. *Judgment affirmed. Broyles, C. J., concurs.*

GARDNER, J., dissenting. A motion for rehearing was made by the State, and granted; defendant made a motion to strike the motion. The writer is of the opinion that the State of Georgia has no legal right to file a motion and be heard as a party in any criminal case under Code § 24-3643 and under the principle announced in *State of Georgia* v. *Jones,* 7 *Ga.* 422, 425, 427. And as to the same principle announced under *State* v. *Lavinia,* 25 *Ga.* 311; also *Mayor &c. of Macon* v. *Wood,* 109 *Ga.* 149 (34 S. E. 322); *Cranston* v. *Augusta,* 61 *Ga.* 572, 579; *State* v. *Thompson,* 175 *Ga.* 189, 191 (165 S. E. 34). While this is true, the instant case is within the breast of the court and the court may, where the case is still before it, during the same term, even by its own motion, change or modify or even substitute a different opinion for

the one rendered. It appears to me as immaterial what motivated the court to consider an opinion with a view of changing it. Therefore I dissent from the ruling that the State may be a proper party for making a motion for rehearing.

I think also that the court erred in overruling the general demurrers to the indictment. The allegations of either count do not purport to charge with reference to cheating and swindling any offense under Code §§ 26-7401 et seq., save Code § 26-7410, which provides: "Any person using any deceitful means or artful practice, other than those which are mentioned in part XII of this title, by which an individual, or a firm, or a corporation, or the public is defrauded and cheated, shall be punished as for a misdemeanor." It is under this section that the indictment is laid.

We then consider the necessary elements which an indictment must contain to charge an offense under that section. Notwithstanding the section characterizes that which is fraudulently used to cheat and swindle to be "any deceitful means or artful practice," it has been repeatedly held that the essential requisites under this section are: " (a) That the representations were made; (b) that they were knowingly and designedly false; (c) that they were made with intent to deceive and defraud; (d) that they did deceive and defraud; (e) that they related to an existing fact or past event; (f) that the party to whom the false statements were made, relying on their truth, was thereby induced to part with his property. It is incumbent upon the State to prove [charge] all of these elements of the offense, and if any one is lacking in the proof [charge] the offense is not made out." *Goddard v. State*, 2 *Ga. App.* 154 (58 S. E. 304); *Isaacs v. State*, 7 *Ga. App.* 799, 800 (68 S. E. 338); *Hester v. State*, 8 *Ga. App.* 380 (69 S. E. 31); *Vaughan v. State*, 36 *Ga. App.* 675 (137 S. E. 854); *Fischer v. State*, 46 *Ga. App.* 207 (167 S. E. 200); *Diamond v. State*, 52 *Ga. App.* 184 (182 S. E. 813); *McCard v. State*, 54 *Ga. App.* 339 (3) (187 S. E. 850). It will be observed that the authorities have juridically determined the expression "any deceitful means or artful practice" to be under this section "representations;" this, we think, is stare decisis. The character of the "representations," whether by word or act, or silence when duty requires action or speech, is not important save only as may be required in any particular case. But whatever the character, nothing will suffice less

than that which is said or done, or omitted to be said or done when duty requires disclosure or action, must be the moving, efficient cause of the *voluntary* and the *known* parting with or delivery of the property or thing to the defendant, from the allegedly defrauded party.

Let us examine the charges as set out in the indictment, in the light of the foregoing requisites, to determine whether any offense was charged. Let us inquire, what acts or things were done by the defendant as "representations," knowingly and designedly, to deceive and defraud the City of Atlanta, and did deceive the city, because of which it parted with its water to its injury? What other necessary elements of the offense are present? The city was contractually obligated to deliver water through the meters to its customers or consumers, and according to its meters at agreed or standard rates. Secretly and stealthily the defendant changed the mechanism of the meter in question, whereby, unknown to the city, a greater quantity of water over any given period of time would pass through the meter than that which the readings of the meter would indicate. The acts of changing the mechanism of the meter were not made known or represented to the city (no representations that these acts themselves would cause the meter to register correctly), and the city was not caused to rely thereon for any purpose. The defendant made no representations that the meter was correctly "registering" the water passing through it. The city of its own business volition relied on the correctness of the readings without representations thereof by the defendant, and according to such readings voluntarily and contractually parted with the quantity or volume thereby indicated, and *received pay from the consumers accordingly*. As to the excess flow, unregistered and unrecorded, *and unknown to the city,* it relied, in parting with this property, on no token, sign or representation from the defendant. But, on the other hand, it unwittingly and involuntarily parted with its possession. Title thereto did not pass. In legal contemplation, there must always be present and existent that which is knowingly offered to the defrauded party for his reliance as true, though fraudulent, and on which the defrauded party does rely, and knowingly and voluntarily parts with his property to his injury. When thus moved or actuated, and only then, it becomes, on a question of concealment of facts which should

have been disclosed, important whether the concealment (in this case the changing of the mechanism of the meter) was so interrelated to those acts or things (representations) as to constitute it a part of the moving cause of the delivery and loss of the property. Otherwise stated, the acts alone of the changing of the mechanism of the meter did not constitute them "representations" or "deceitful means or artful practice," notwithstanding the readings as affected were currently taken by the city, of its own volition, as correct. We think this is true, whatever might be the thieving content of the acts. In discussing statutes, as the one now under review, Code § 26-7410, it was said in *Morse* v. *State, 9 Ga. App.* 424, 425 (71 S. E. 699): "It can not be doubted that these statutes originated in certain defects in the application of the laws against larceny, and from a failure of justice which frequently arose from the subtle distinction between larceny and fraud. Although property might be obtained from the possession of the owner by the grossest character of fraud, it would not constitute larceny if in fact it was *obtained by the consent of the owner* [italics ours]; and it was to cure this defect that these laws, defining cheating and swindling or obtaining property by false pretenses, were enacted."

It is too well established that the averments rather than the name by which they are called determine the offense charged. This has been so many times held and is so universally recognized that it would be useless to set out the many authorities which sustain it.

We come next to consider the more difficult question as to whether or not any crime under the laws of this State is alleged in the indictment. It is urged by the State that the allegations are sufficient under Code § 26-7410, which is generally known as the omnibus section of cheating and swindling, and which reads as follows: "Any person using any deceitful means or artful practice, other than those which are mentioned in Part XII of this Title, by which an individual, or a firm, or a corporation, or the public is defrauded and cheated, shall be punished as for a misdemeanor." The burden of this portion of the argument is that false representations are not necessary to be alleged to set out an offense under this section. Let us consider the correctness of this view. Counsel for the State seem to assume that we intended to

hold that "representations" consist of spoken words. We did not so intend. There must be, under this section, some scheme or device or deceitful means, or artful practice, to defraud and cheat. Under every phase of cheating and swindling, as set out under Part XII of our Code and "stellionates" in Scot's and civil law there must be some deceitful means and artful practices whereby the person cheated and defrauded must voluntarily and knowingly part with the subject matter of the transaction which caused him damage. Under the indictment in the instant case, there is nowhere alleged that the City of Atlanta, through any agent representing it, voluntarily and knowingly parted with the subject matter of the transaction. Indeed, it is alleged that the city did not know it until several months afterwards. It is essential, in any form of cheating and swindling, under out law, in so far as I have been able to discover from my own individual research or other authorities furnished by the attorneys, that there must be a voluntary parting with knowledge of the property on the part of the owner of it. This is true, it matters not whether it be by false representations consisting of words, trick, sign, device, scheme, silence, or other artifice. Unless the parting with the property is voluntary with knowledge, it can not be cheating and swindling under any form, under our law. The illustration of obtaining possession of the ham, as set out in the majority opinion, is not at all applicable, as I see it, to the facts of the case at bar. In the illustration, the merchant voluntarily and knowingly parted with the title to the article. The cheat silently withheld the fact that he had changed the scales, thereby representing falsely an existing fact which he knew and which was unknown to the merchant. As heretofore stated, in the case at bar, while it is true the accused changed the meter, he did not thereby cause the city to knowingly and voluntarily part with the property. I see no similarity in the application.

Suppose the mechanism of the meter had been so manipulated that it registered no quantity of water passing through it, instead of registering half the quantity, would this be different from tapping the pipe line or reservoir above the meter? The difference in the failure to register any quantity and the registering of an incorrect quantity passing through the meter, it seems would be one of degree only. Such conduct may be likened to clipping the

pasture wire so the cattle may pass through and be stolen. The principle would not be altered if only a portion and not all of the cattle could or did pass out of the pasture. See Clark *v.* Oklahoma, supra. See also Cox's Criminal Law Cases, Reg. *v.* White, 213.

But we are told that the allegations of the indictment set out a case of cheating and swindling under Code § 112-9901. This section denominates it a crime to buy or sell by false weights and measures, and, since the water in question passed through the meter which the defendant with other conspirators had manipulated so that the meter would not measure correctly but would register a less. quantity of water than actually passed through it, it is contended that the allegations of the indictment set out an offense of buying water by a false measure, and therefore the allegations alleged this species of cheating and swindling. Again, in pursuing this line of argument, we run squarely into the proposition that the allegations of the indictment can not be cheating and swindling under this section. It will be readily reasoned that a sale is a contract. A contract is the meeting of minds on· a subject matter. It involves, necessarily, the voluntary and knowingly trafficking in and delivery of the property. Were this not so it would not, under any definition of contract, be a sale. So it seems plain to the writer that this section is eliminated under the allegations of the indictment.

But it is contended that the allegations are sufficient to allege a crime as set out in Code § 26-5001. This section reads: "Any other offense against public justice not in this Title provided for shall be a misdemeanor." The Title to which reference is made is Part IX, "Crimes against public justice and official duty." The section refers to crimes of a kindred and similar nature as described in the Title above, and by no stretch of the imagination can it be said that the allegations of the indictment under consideration approach the subjects dealt with in that Title of our law.

We come next to consider whether or not the allegations of the indictment sufficiently aver the offense of simple larceny, as is contended by the State. To my mind this is the most difficult question presented. The essential element of simple larceny is trespass against possession, with intent to permanently deprive the owner of possession. This trespass may be completed in two ways:

(1) by secretly and stealthily obtaining possession without knowledge of the owner; and (2) by fraudulently obtaining possession with the knowledge of the owner with intent at the time to steal the property. The present indictment partakes of both the essential of larceny and of cheating and swindling. It partakes of larceny in that it alleges, as the writer construes it, that the property was obtained involuntarily and without the knowledge of the owner. But all the other averments, the setting and background, partake of the offense of cheating and swindling. Unless we abrogate all the rules of required pleading in an indictment as it obtains to larceny, we can not hold that the indictment is sufficient in its allegations to set forth the offense of simple larceny as distinguished from cheating and swindling.

This court held in *Lee* v. *State,* supra, as follows: "Under the facts of this case, since the purchaser voluntarily delivered the property in the money to the accused, he could not be guilty of stealing the same from her, and therefore is not guilty of the offense with which he was charged and of which he was convicted; and the judge of the superior court erred in declining to sanction the petition for certiorari." And: "In the instant case the accused may have been guilty of cheating and swindling. As to this we are not called upon to decide, but since the purchaser voluntarily delivered the property in the money to the accused, he could not be guilty of stealing the same from her, and therefore is not guilty of the offense with which he was charged and of which he was convicted."

If one indicted for larceny can not be convicted if the facts proved make a case of cheating and swindling, it would seem that the converse is true; that where the averments are couched in language applicable only to cheating and swindling it can not be the basis for a conviction of larceny, although there be some elements of larceny also averred.