**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ellis WALKER, Defendant-Appellant.**

**No. 15092.**

United States Court of Appeals Sixth Circuit.

July 19, 1963.

Willis F. Ward, Detroit, Mich., for appellant.

Milton J. Trumbauer, Jr., Asst. U. S. Atty., Detroit, Mich., Lawrence Gubow, U. S. Atty., Detroit, Mich., on brief, for appellee.

Before CECIL, Chief Judge, WEICK, Circuit Judge, and McALLISTER, Senior Circuit Judge.

CECIL, Chief Judge.

This is an appeal by Ellis Walker, defendant-appellant,[1] from a judgment of conviction in the United States District Court for the Eastern District of Michigan, Southern Division, on a six-count indictment charging possession and sale of narcotics. The defendant was charged in separate counts of possession of heroin on each of three days, December 12th, 15th and 28th, in the year 1960, in violation of Section 174, Title 21, U.S.C. He was also charged in separate counts of sales of the same heroin on the same days in violation of Section 4705(a), Title 26, U.S.C.

The alleged sales were made by the defendant from his home in apartment 302 of the Drake Hotel, located at 246 Alexandrine street, in the city of Detroit, to one James Eddington. Eddington is the pivotal witness in this case and the thrust of the defense on appeal is the lack of corroboration to his testimony. This man Eddington, called by the agents an informer or special agent, was of a somewhat questionable character as was candidly admitted by government counsel.

Eddington was convicted of armed robbery in 1938, of possession of narcotics in 1953 and of addiction to narcotics in 1958. This last charge had been changed from possession to addiction as a mark of leniency by reason of testimony which he gave in behalf of the government. His common-law wife, who was also addicted to the use of narcotics was a prostitute and he was a panderer. They engaged in these occupations to obtain money to supply their addictions.

Eddington was arrested on November 17, 1960, in possession of 9 capsules of heroin. He was arrested by Edmund Irvin, federal narcotic agent, and taken to the office of the Bureau of Narcotics. In substance Agent Irvin asked him to

1. Referred to as defendant.

assist the Bureau in obtaining narcotic evidence from suspected peddlers and to introduce undercover agents to them or to purchase narcotics himself under observation. Eddington agreed to undertake this and Agent Irvin told him that this cooperation would be explained to the prosecutor and the court at the time of sentence. At the time of trial, December 19, 1961, Eddington had never been taken into court.

In furtherance of this plan, Eddington was taken to the vicinity of the Drake Hotel by narcotic agents on each of the three days in question, supplied with money and equipped with a Fargo device. A Fargo device is an electronic device consisting of two parts, a transmitter and a receiving set. The transmitter was concealed on the person of Eddington and agents Irvin and George Notel had the receiving set in their car. Eddington then went to the defendant's apartment where he claims to have made the purchases of heroin which are the subject of the charges of possession and sale in the indictment.

█ Agents Irvin and Notel were permitted to testify concerning the conversations they heard over the receiving set. The only objections we find in the record before us and which can be the subject of this appeal relate to the identity of the defendant by the listeners over the receiving set. Questions not raised at the trial cannot be presented on appeal. City of Memphis v. Southern Bell Tel. & Tel. Co., 316 F.2d 535, 537, C.A. 6; United States v. Koury, 319 F.2d 75, C.A. 6; Strickler v. Pfister Associated Growers, Inc., 319 F.2d 788, C.A. 6.

Since the conversations heard through the Fargo device are part of the corroboration of the witness Eddington, the identity of the voices heard on the receiving set and corroboration are inseparably related. We will examine the record with reference to this subject.

After the arrest, the defendant admitted that he lived in apartment 302, at the Drake Hotel, during the time in which the transactions involved herein occurred. On December 12th, federal narcotic agent Arthur Lewis, from a position in the hall of the Drake Hotel, saw Eddington enter apartment 302. In about six or seven minutes, he saw Eddington coming from this same apartment. On the same day, agent Larry C. Williams delivered a Fargo transmitter to agents Irvin and Notel. He then took up a position from which he could observe the front of the hotel. He saw Eddington enter the hotel at 2:32 p. m. and leave at about 2:40 p. m. On this occasion, agents Irvin and Notel gave Eddington some money and secreted the transmitter of the Fargo device on his person. They kept the receiver in their car. They saw Eddington depart toward the Drake Hotel. Over the receiver they heard footsteps going upstairs and the sound of a buzzer. They then heard conversation between two male voices that could be identified as negotiation for the purchase of narcotics. They could identify the voice of Eddington but did not recognize the other one.

At about 10 p. m. on the night of December 15th, agents Irvin and Notel again gave Eddington some money and secreted the Fargo transmitter on his person. Agent Arthur Small and Detroit Police Officer Gyetvai took a position of observation across the street from the Drake Hotel and saw Eddington enter the building at 10:20 p. m. They saw him leave the same building at approximately 10:30 p. m. They then returned to the place of meeting and met agent Notel and Eddington. Agents Notel and Irvin parked their car behind the building. Notel testified that he heard over the Fargo receiving set footsteps and an electric buzzer type of door lock. He then heard further footsteps which sounded as if they were going upstairs, knocking on a door and a male voice answer: "Who is there?" He heard a response from a voice that he recognized as Eddington's say, "J.D." There was further conversation between this voice and the other male voice that could be recognized as a purchase and sale of "dope."

On December 28th, at about 1:00 p. m., agent Irvin saw the defendant Walker enter a 1958 Continental Lincoln automobile and drive away. The car was being operated by a woman. At about 2:00 p. m., agents Irvin and Notel gave Eddington some money and secreted the Fargo transmitter on him. They saw him enter the hotel and leave almost immediately. Eddington advised the agents that he got no response from the bell at apartment 302.

On this same day, agent Larry C. Williams, at about 3:05 p. m., saw the defendant Walker get out of a vehicle in the rear of the Drake Hotel. He then changed his position so that he could see the front of the hotel and he observed Eddington enter the hotel at 3:20 p. m. He saw Eddington leave the hotel at 3:35 p. m.

After Walker returned, the Fargo transmitter was activated on Eddington by agents Irvin and Notel and he, being still in possession of the money, was taken to the hotel where he entered the front door at approximately 3:20 p. m. Agent Irvin testified that he heard conversation over the receiving set and identified the voice of Eddington saying, "Hi Tex." There was a break in the transmission and only the voice of Eddington was heard.

The defendant was arrested on March 8, 1960, by agent Notel and other agents and police officers. Notel conversed with him at this time. Notel testified that the male voices other than that of Eddington which he heard over the Fargo receiving set on December 12th and December 15th were the same and that they were similar to Walker's voice which he heard in conversation after arrest.

The testimony of the agents with reference to the amount of money they gave Eddington in preparation for each purchase, the number of capsules of heroin he gave them after each purchase and the amount of money returned to them each time corresponds with the testimony of Eddington. In other respects the testimony of the agents and Eddington is in harmony. The undisputed testimony is that the defendant was a resident of apartment 302 in the Drake Hotel at the time of the alleged sales. On the occasion of the first sale, Eddington was seen to enter that apartment. On December 28th Walker was seen to leave in a car and was later seen to return. During this interim, Eddington reported that no one answered the bell at 302. After Walker returned, Eddington testified that he was admitted by Walker.

Viewing this record as a whole, we are of the opinion that there is substantial corroboration of the testimony of Eddington that he made purchases of heroin from the defendant Walker. As to the conversations heard through the use of the Fargo device, there is evidence that the male voice heard on December 12th and 15th is the same as the voice of Walker. On the 28th no voice was heard through the Fargo device other than Eddington's. Consequently its use on that day produced no evidence against Walker. Then there is the testimony of Eddington. He identified Walker as the person to whom he talked when he was equipped with the Fargo transmitter.

Counsel for the defendant labors under the mistaken belief that the informer or special agent must be corroborated to the extent that someone saw him make the purchase from Walker and that there must be some identification other than his that it was Walker's voice that was transmitted and received over the Fargo device. In other words, he seems to take the position that a complete prima facie case must be made out without the aid of the informer. This is not true.

The credibility of the informer, as well as other witnesses, is a matter for the jury to determine. Goldman v. United States, 245 U.S. 474, 477, 38 S.Ct. 166, 62 L.Ed. 410; Bullock v. United States, 289 F. 29, 32, C.A. 6; Betz v. United States, 2 F.2d 552, 554, C.A. 6; Knable v. United States, 9 F.2d 567, 569, C.A. 6; Keith v. United States, 11 F.2d 933, 935, C.A. 6; Local 175 of the International Brotherhood of Electrical Workers v. United States, 219 F.2d 431, 433, C.A. 6, cert. denied, 349 U.S. 917,

75 S.Ct. 606, 99 L.Ed. 1250; Shibley v. United States, 237 F.2d 327, 331, 334, C.A. 9. "The reliability of the device and the adequacy of the identification of the voices are matters going to the weight to be given to that evidence rather than to its admissibility, and were for the jury to determine." United States v. Miller, 316 F.2d 81, 83, C.A. 6.

Counsel for the defendant made no objection at the trial to the use of the Fargo device per se and in the brief on appeal counsel concedes that the Supreme Court has established the right of police officers to use such an instrument. In spite of this an inference to be drawn from the argument in the brief is that its use was improper. It was not used as the sole means of corroboration of the informer as suggested by counsel. The use of this device has been approved in the following cases: On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270, rehearing denied, 344 U.S. 848, 73 S.Ct. 5, 97 L.Ed. 659; United States v. Miller, 316 F.2d 81, C.A. 6; United States v. Finazzo, 288 F.2d 175, 177, C.A. 6. See United States v. Vittoria, 284 F.2d 451, 455, C.A. 7; United States v. Kabot, 295 F.2d 848, 853–854, C.A. 2, cert. denied, 369 U.S. 803, 82 S.Ct. 641, 7 L.Ed.2d 550; Todisco v. United States, 298 F.2d 208, C.A. 9, cert. denied, 368 U.S. 989, 82 S.Ct. 602, 7 L.Ed.2d 527.

Counsel for the defendant urges this Court to reject the District Court's submission of the informer's testimony to the jury. No objection was made to his testimony at the trial nor was any motion made for acquittal either at the close of the government's case or at the close of all the testimony. While this Court has the right under rule 52(b) of the Federal Rules of Criminal Procedure to notice plain errors affecting the substantial rights of a defendant, we find no such errors here.

The judgment of the District Court is affirmed.