Commonwealth *v.* Sullivan, Appellant.

Argued April 23, 1969.  Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused April 21, 1970.

*Julian E. Goldberg,* for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Taras M. Wochok,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, January 9, 1970:

Beatrice Sullivan [appellant] was convicted of murder in the first degree arising from the killing of her supposed husband, Dock Sumpter. The Commonwealth's theory was that appellant conspired with her paramour, Willie Payne, who admitted firing the fatal shot, to murder Sumpter. The trial court denied a motion for a new trial, appellant was sentenced to life imprisonment, and from that judgment of sentence the instant appeal was taken.

At trial, Payne testified that appellant had become friendly with him approximately three months before the murder. Some time later appellant asked Payne to kill Sumpter in exchange for which Payne would receive one half of a $10,000 life insurance policy on Sumpter's life. Finally, on the day before the murder, appellant gave Payne money to buy a gun and accompanied him to a pawn shop where he purchased a rifle.

The last discussion concerning the plot occurred on the night of the actual murder. Payne testified that appellant had called him on the telephone and asked him whether he intended to go through with the murder. The testimony as to the substance of that conversation was properly admitted on the basis of Payne's voice identification of the appellant, Mrs. Sullivan. *Burton v. Pacific Mutual Life Insurance Company,* 368 Pa. 613, 84 A. 2d 310 (1951); *Commonwealth v. Del Giorno,* 303 Pa. 509, 154 A. 786 (1931). Unknown to either party, Payne's mother (Mrs. Maxwell) picked up the extension phone on the second floor and over-

heard the conversation. She was allowed to testify, over the vigorous objection of appellant's counsel, as to what she heard. The lower court overruled this objection on the ground that it was unnecessary for Mrs. Maxwell to identify the caller as appellant because her son had already made a positive identification. On cross-examination, she further testified that she recognized the voice as belonging to a Mrs. Sullivan, who had called a few times before asking for Payne. Although several other witnesses corroborated portions of Payne's story, Payne and his mother were the only witnesses who testified as to the actual conspiracy.

Appellant's principal objection concerns the testimony of Mrs. Maxwell. Appellant argues that Mrs. Maxwell should not have been permitted to testify as to what she overheard because she could not adequately identify the voice of the party to whom her son, Payne, was speaking. However, our primary question is not whether Mrs. Maxwell's identification was adequate, but rather whether *any* further identification was required after the voice had been positively identified by Payne.

This is a question of first impression in this Court. Under our case law, before one of two parties to a telephone conversation may testify as to the substance of that conversation, the proper identification of the other party to the conversation must be established. *Smithers v. Light,* 305 Pa. 141, 157 A. 489 (1931).

Absent such identification, the testimony would be inadmissible. On the other hand, "there is no rule of evidence which requires that *every* witness to a conversation shall himself identify the participants in it, identification by others being considered sufficient." 22A C.J.S. *Criminal Law* §644, at 516 (1961) (emphasis added). The rule stated in *Smithers v. Light* is inapplicable where the substance of the conversation is to be related by a witness who was on another line,

and where the recipient of the call has already testified and made a valid identification of the caller. In such a situation, the identity of the caller rests upon the testimony of the recipient rather than that of the eavesdropper. The eavesdropper's testimony would merely corroborate the substance of the conversation which has already been properly identified. Thus, as long as the identity of the caller has been established by some competent means such as voice identification or circumstantial evidence, *Smithers v. Light,* 305 Pa. 141, 144-45, 157 A. 489, 490 (1931), it is not necessary that the present witness also be able to identify both parties. One such identification may satisfy the requirement for foundation testimony that is needed to establish the relevance, and therefore admissibility, of the testimony sought to be introduced as to the substance of the conversation. It would not be in accord with the reasons for requiring identification to demand such proof from a witness who is called upon merely to corroborate the identifying witness' version of what was said.

In an automobile accident case, if Witness A testified that he saw a car driven by the defendant collide with a car driven by the plaintiff, Witness B would certainly be permitted to present corroborating testimony as to how the accident happened, even though Witness B did not see that it was the defendant who was driving the first car. The only foundation evidence that would be required from him would be evidence sufficient to establish that he was in fact testifying as to the same accident seen by Witness A. Applying this same concept to the case at bar, once Payne testified that he recognized Mrs. Sullivan's voice and had related his version of the conversation, all that was required to make Mrs. Maxwell's corroborating testimony relevant, and therefore admissible, was evidence that she and Payne were speaking of the same con-

versation. We find that there was sufficient evidence to support the ruling of the lower court that they were testifying as to the same telephone conversation.

Although this Court has not had occasion to pass upon this question before, there is ample support elsewhere for the rule that once the parties to a telephone conversation have been properly identified by one witness, no further identification is required by an eavesdropper who merely corroborates the prior testimony as to the substance of the conversation. *United States v. Walker,* 320 F. 2d 472 (6th Cir. 1963), *cert. denied* 375 U.S. 934 (1963); *United States v. De Marie,* 226 F. 2d 783 (7th Cir. 1955), *cert. denied* 350 U.S. 966 (1956); *People v. Fitzpatrick,* 247 P. 601 (Cal. App. 1926); *Thompson v. State,* 67 Ga. App. 240, 19 S.E. 2d 777 (1942) *cert. denied* 317 U.S. 667 (1942); *Greenberg v. Greenberg,* 79 Ind. App. 218, 133 N.E. 18 (1921); *State v. Rowley,* 198 Iowa 613, 198 N.W. 37 (1924), *writ of error dismissed,* 269 U.S. 594 (1925); *State v. Vickers,* 209 Mo. 12, 106 S.W. 999 (1907); *State v. Vanderhave,* 47 N.J. Super. 483, 136 A. 2d 296 (1957), *aff'd sub nom. State v. Giardina,* 27 N.J. 313, 142 A. 2d 609 (1958); 29 Am. Jur. 2d *Evidence* §384 (1967); 22A C.J.S. *Criminal Law* §644, at pps. 516-17 (1961).

This approach is similar to that which has already been adopted by this Court in *Ehrenstrom v. Hess,* 262 Pa. 104, 105 A. 44 (1918), whereby "[a] telephone conversation between the parties to a litigation upon the subject-matter of the litigation, having been testified to by one of the parties, may also be testified to by a bystander, so far as he heard it." Annot., 71 A.L.R. 5, 53 (1931) (citing, *inter alia, Ehrenstrom v. Hess,* 262 Pa. 104, 105 A. 44 (1918)). If the bystander merely corroborates other competent testimony as to the substance of the conversation, his failure to identify the person at the other end of the line will

not affect the admissibility of his testimony. 29 Am. Jur. 2d *Evidence* §384 (1967). In the case of a bystander's testimony, as in the case of an eavesdropper's testimony, the witness is merely corroborating the substance of what he heard of the conversation. Whether the jury believes that the defendant was the other party to the conversation is the problem of identification. However, in both instances this problem would involve the credibility of the testimony of the first witness, who was a party to the call, and upon whose identification the admissibility of all evidence as to what was said must rest.

In short, since Payne was properly permitted to relate his version of the telephone conversation, Mrs. Maxwell was properly permitted to present her testimony in corroboration of Payne as to what was said.

Appellant's second contention is somewhat difficult to follow. In essence, appellant seems to argue that Payne's testimony is inherently untrustworthy. She then proceeds to point out six alleged inconsistencies in his testimony. We are not persuaded. First, credibility is peculiarly an issue for the jury and the jury chose to believe Payne. Second, we have studied Payne's testimony and conclude that, on the face of the record, his testimony appears to be consistent. Several of appellant's examples of inconsistent testimony were taken out of context and are fully explained by later testimony. Other apparent inconsistencies can be attributed to the fact that Payne has had very little formal education and, not surprisingly, does not always express himself with clarity. Appellant's second contention is totally without merit.

Judgment affirmed.

Mr. Justice COHEN and Mr. Justice EAGEN dissent.

_____

CONCURRING OPINION BY MR. JUSTICE O'BRIEN:

I concur in the result reached by the majority because I believe that sufficient circumstantial evidence

was introduced for Mrs. Maxwell to authenticate appellant's voice. Mrs. Maxwell testified that she recognized the voice as belonging to a woman who had called before and identified herself as a Mrs. Sullivan. While I recognize the possibility that such evidence can be counterfeited, when the undisputed evidence that appellant and Payne were having an affair is considered, it is logical to assume that the person who identified herself as Mrs. Sullivan was indeed Mrs. Sullivan.

While I agree in theory with the majority's approach—that once someone identifies the voice, anyone can testify as to the substance of the conversation—I find it inapplicable to the present situation. In the first place, it was not made clear to the jury that Mrs. Maxwell's testimony rises or falls with Payne's identification. The jury should have been instructed that it could not use Mrs. Maxwell's testimony unless it believed that Payne was really talking to Mrs. Sullivan.

What is even more crucial, however, is that the "one identification, anyone can testify as to substance" theory can only apply where there can be no doubt that it is the same conversation that is being related. Here Payne testified that the conversation was at 10:45 p.m., while Mrs. Maxwell stated that the conversation she heard was at 8:00. Unless Mrs. Maxwell can herself authenticate the voice, her testimony must fall.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I must dissent from the majority's decision holding Mrs. Maxwell's testimony admissible. Mrs. Maxwell did not identify the voice she overheard; she only testified as to the content of the conversation. The majority holds that for her testimony to be admissible, there must be "evidence that she and Payne were speaking of the same conversation." The record is

clear, however, that they were *not* speaking of the same conversation.

Payne, the accomplice, testified as follows: On Sunday night, at exactly a quarter to eleven, he received a telephone call from Mrs. Sullivan, the defendant. Mrs. Sullivan asked Payne whether he was " 'still going to do what I told you to do—you know.' " She also related the amount he would be paid. "Right after" Payne received the call, he went to the park to meet Mrs. Sullivan and the victim, the meeting to occur at 11:00 p.m. He further testified that he did not see his mother after hanging up the receiver and that he did not know she had listened in. He left the house "too fast" to find out such matters.

Mrs. Maxwell, Payne's mother, testified as follows: At approximately 7:15 p.m. she heard the telephone ring, but did not answer it. At approximately 7:45 p.m., after bathing and dressing, she picked up an upstairs extension phone to call a cab and overheard a conversation between her son and a woman. Mrs. Maxwell did not testify that the woman whose voice she heard was the defendant, but she did testify that the unidentified caller said she wanted Payne to kill a man and would pay him $5000. While the conversation was in progress, Mrs. Maxwell, by her testimony, "walked downstairs, took the phone out of his [Payne's] hand and hung it up." She talked with her son, telling him not to get involved with "people like that." Since her cab had not arrived, her son agreed to drive her to her destination. This "must have been around 8:00 p.m." Her son took her there, she stayed until "about 10:00 p.m.," and arrived back home "at 10:30 p.m." Mrs. Maxwell testified that she was sure of the time. When she returned home at 10:30 p.m. she went to bed—and did not see Payne any more that evening.

These detailed, and different, stories do not permit the conclusion that Payne and Mrs. Maxwell were tes-

tifying about the same telephone conversation. Hence, there is no link between Mrs. Maxwell's overheard conversation and the defendant in this case, and, in my view, appellant is entitled to a new trial.

Further, in my view the facts of this case present a serious question under *Commonwealth v. Murray*, 423 Pa. 37, 223 A. 2d 102 (1966) and the Act of July 16, 1957, P. L. 956, No. 411, §1, 18 P.S. §3742 (pp) (commonly known as the "anti-wire tapping" statute), but I do not believe that the issue is properly before us.

Although appellant's failure to object at trial to the admission of the testimony of the witness who overheard the telephone conversation on the ground that it violated the Act of July 16, 1957, can be excused by the fact that *Murray* (which interpreted the act) had not yet been decided, the same cannot be said for appellant's failure to press this argument on appeal, either in briefs or at oral argument. This appeal was taken well after the date of the *Murray* decision, and appellant's failure to argue that the admission of the evidence in question violated the Act of July 16, 1957, precludes us from giving her relief on that ground.